# EXHIBIT C

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS                                    SUPERIOR COURT
                                                 CIVIL ACTION NO. 04-0047

```
                                    )
RBM Technologies, Inc.,             )
                                    )
        Plaintiff,                  )
v.                                  )
                                    )
Albert L. Lash, IV and              )
Savonix Corporation,                )
                                    )
        Defendant                   )
                                    )
```

## LASH ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Albert L. Lash ("Lash"), as and for his Answer to the Amended Complaint

filed by Plaintiff RBM Technologies, Inc. ("RBM"), respectfully alleges as follows:

1.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 1 of the Amended Complaint.

2.      Admits the allegations contained in paragraph 2 of the Amended Complaint.

3.      Admits the allegations contained in paragraph 3 of the Amended Complaint.

4.      Admits that this Court has personal jurisdiction over Lash pursuant to G.L. c.

223A §2, based on Lash's domicile in the Commonwealth of Massachusetts.

5.      Admits that this Court has personal jurisdiction over Savonix pursuant to G.L. c.

223A §2 because Savonix is organized under the laws of the Commonwealth of Massachusetts

and maintains its principle place of business in the Commonwealth of Massachusetts.

6.     Admits that Plaintiff purports to invoke venue under the statute cited in paragraph 6 of the Amended Complaint; admits that venue is proper in the Commonwealth of Massachusetts, Middlesex County, but should be in Federal Court due to the underlying issues of federal copyright law intertwined with this dispute that require resolution before Federal Court.

7.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Amended Complaint.

8.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Amended Complaint.

9.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Amended Complaint.

10.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Amended Complaint.

11.    Denies that RBM developed a working prototype software program named Merchandising Manager in the winter and spring of 2001 without any involvement by or input from Lash; denies the remaining allegations contained in paragraph 11 of the Amended Complaint.

12.    Denies that RBM has been marketing the prototype software to customers nationwide; admits that RBM has been marketing the software program authored by Lash to customers nationwide.

13.    Denies the allegations contained in paragraph 13 of the Amended Complaint. To the extent that Plaintiff intends to rely on the existence of a written employment contract (the "Contract"), Defendant specifically denies the Contract was signed before September, 2001, denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the

2

enforceability of said Contract, denies the enforceability of any specific language of said
Contract, and denies Lash served as the Company's "Vice President and Managing Director of
Technology."

14.     Denies the allegations contained in paragraph 14 of the Amended Complaint. To
the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically
denies such language as is quoted in the Amended Complaint appears in the alleged Contract.
Plaintiff has improperly sought to recast the Contract, which used language such as "will" and
"shall" to reflect its future applicability, i.e., "[a]t a mutually agreeable date," by replacing such
words with "was" and "was required to," in an unjustified attempt to suggest the Contract was
intended to have retroactive effect. Defendant denies that Lash was ever made the Company's
Vice President and Managing Director of Technology, denies the satisfaction of conditions
precedent to the taking effect of said Contract, denies the enforceability of said Contract, and
denies the enforceability of such language in the alleged Contract.

15.     Denies the allegations contained in paragraph 15 of the Amended Complaint.

16.     Denies the allegations contained in paragraph 16 of the Amended Complaint. To
the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically
admits such language as is quoted in the Amended Complaint appears in the alleged Contract,
but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the
enforceability of said Contract, and denies the enforceability of such language in the alleged
Contract.

17.     Denies the allegations contained in paragraph 17 of the Amended Complaint. To
the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically
denies such language as is quoted in the Amended Complaint appears in the alleged Contract.

3

Plaintiff has improperly sought to recast the Contract, which used language such as "agree" and "acknowledge" to reflect its future applicability, i.e. "[a]t a mutually agreeable date," by replacing such words with "agreed" and "acknowledged," in an unjustified attempt to suggest the Contract was intended to have retroactive effect.  Defendant denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said contract, and denies the enforceability of such language in the alleged Contract.

18.    Denies the allegations contained in paragraph 18 of the Amended Complaint.  To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically denies such language as is quoted in the Amended Complaint appears in the alleged Contract. Plaintiff has improperly sought to recast the Contract by omitting: "and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged," i.e. language reflecting that more than mere employment had been promised to Lash.  Defendant denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

19.    Denies the allegations contained in paragraph 19 of the Amended Complaint.  To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language as is quoted in the Amended Complaint appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

20.    Denies the allegations contained in paragraph 20 of the Amended Complaint.  To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically

4

denies such language as is quoted in the Amended Complaint appears in the alleged Contract. Plaintiff has improperly sought to recast the Contract by using "was and would" instead of "are and will be." Defendant denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

21.     Denies the allegations contained in paragraph 21 of the Amended Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically denies such language as is quoted in the Amended Complaint appears in the alleged Contract. Plaintiff has improperly sought to recast the Contract by omitting the phrase "Confidential Information, as it may exist from time to time," and improperly distorting the key phrase "shall not disclose" with "agreed not to disclose." (emphasis added). Defendant denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said contract, and denies the enforceability of such language in the alleged Contract.

22.     Denies the allegations contained in paragraph 22 of the Amended Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language as is quoted in the Amended Complaint appears in the alleged Contract. Defendant specifically denies that the Merchandising Manager software that he alone authored before the alleged Contract was signed and before the alleged employment commenced falls within the scope of this clause, i.e., it is not something "which (he) may conceive or develop during the term of employment with the Company." (emphasis added). Defendant denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said contract, and denies the enforceability of such language in the alleged Contract.

23.     Denies the allegations contained in paragraph 23 of the Amended Complaint. To
the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically
denies such language as is quoted in the Amended Complaint appears in the alleged Contract.
Defendant specifically points out that Plaintiff omitted "of this letter" in an attempt to portray
what was merely an expression in a letter of proposed terms of future engagement as a binding
contract negotiated by the parties. Defendant denies the satisfaction of conditions precedent to
the taking effect of said Contract, denies the enforceability of said Contract, and denies the
enforceability of such language in the alleged Contract.

24.     Denies the allegations contained in paragraph 24 of the Amended Complaint. To
the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically
denies such language as is quoted in the Amended Complaint appears in the alleged Contract.
Plaintiff improperly uses "agreed" instead of "agree" in an unjustified attempt to suggest the
Contract was intended to have retroactive effect. Defendant specifically points out that in this
document which Plaintiff drafted, Plaintiff merely referred to "Company Property" which "may"
be in his possession, i.e., Plaintiff did not specifically identify any such property, including
without limitation, the Merchandising Manager software Lash alone had authored and owned.
(emphasis added). Defendant denies the satisfaction of conditions precedent to the taking effect
of said Contract, denies the enforceability of said Contract, and denies the enforceability of such
language in the alleged Contract.

25.     Denies knowledge or information sufficient to form a belief as to the truth of the
allegations contained in paragraph 25 of the Amended Complaint.

26.     Admits that he terminated his relationship with RBM on or about December 8,
2003, effective immediately, and without providing thirty (30) days notice. To the extent that

6

Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits language requiring 30 days' notice to terminate employment in the alleged Contract, but denies that employment ever commenced, denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of such language in the alleged Contract.

27.     Denies the allegations contained in paragraph 27 of the Amended Complaint.

28.     Admits that RBM Systems is now listed as the registrant of "rbmtechnologies.com"; denies the remaining allegations in paragraph 28 of the Amended Complaint.

29.     Admits the allegations contained in paragraph 29 of the Amended Complaint.

30.     Admits that RBM Systems is now listed as the registrant of "rbmtechnologies.com; denies the remaining allegations contained in paragraph 30 of the Amended Complaint.

31.     Admits the allegations contained in paragraph 31 of the Amended Complaint.

32.     Admits contacting Dotster, Inc. on or about December 23, 2003 regarding the domain name "rbmtechnologies.com," i.e, in his capacity as an owner of RBM Technologies, and out of concern that a third party hacker was illegally attacking the site. Otherwise, Defendant denies the remaining allegations contained in paragraph 32 of the Amended Complaint.

33.     Denies the allegations contained in paragraph 33 of the Amended Complaint.

34.     Admits that after December 23, 2003, the screen attached and incorporated by reference to the Verified Complaint as Exhibit D was displayed when the "rbmtechnologies.com" website was accessed, but denies the remaining allegations contained in paragraph 34 of the Amended Complaint.

35.     Admits the allegations contained in paragraph 35 of the Amended Complaint.

36.     Admits the allegations contained in paragraph 36 of the Amended Complaint.

37.    Admits the allegations contained in paragraph 37 of the Amended Complaint.

38.    Admits that after December 23, 2003, RBM's website no longer functioned and that RBM's e-mail communications did not operate, but denies the remaining allegations contained in paragraph 38 of the Amended Complaint.

39.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Amended Complaint.

40.    Denies the allegations contained in paragraph 40 of the Amended Complaint.

41.    Admits the allegations contained in paragraph 41 of the Amended Complaint.

42.    Admits that Savonix markets software solutions to companies in the retail, real estate, and facilities management industries for a variety of benefits, including better space management, lower total cost of ownership, and improved communications; and denies the remaining allegations contained in paragraph 42 of the Amended Complaint.

43.    Admits the allegations contained in paragraph 43 of the Amended Complaint.

44.    Denies the allegations contained in paragraph 44 of the Amended Complaint.

45.    Admits the allegations contained in paragraph 45 of the Amended Complaint.

46.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Amended Complaint.

47.    Denies the allegations contained in paragraph 47 of the Amended Complaint.

## COUNT I – BREACH OF CONTRACT AGAINST LASH

48.    Paragraphs 1 through 47 are hereby repeated and re-alleged with the same force and effect as if fully set forth herein.

49.    Denies the allegations contained in paragraph 49 of the Amended Complaint.

50.    Denies the allegations contained in paragraph 50 of the Amended Complaint.

8

51.   Denies the allegations contained in paragraph 51 of the Amended Complaint.

52.   Denies the allegations contained in paragraph 52 of the Amended Complaint.

53.   Denies the allegations contained in paragraph 53 of the Amended Complaint.

54.   Denies the allegations contained in paragraph 54 of the Amended Complaint.

55.   Denies the allegations contained in paragraph 55 of the Amended Complaint.

56.   Denies the allegations contained in paragraph 56 of the Amended Complaint.

57.   Denies the allegations contained in paragraph 57 of the Amended Complaint.

58.   Denies the allegations contained in paragraph 58 of the Amended Complaint.

59.   Denies the allegations contained in paragraph 59 of the Amended Complaint.

60.   Denies the allegations contained in paragraph 60 of the Amended Complaint.

## COUNT II – CONVERSION AGAINST LASH

61.   Paragraphs 1 through 60 are hereby repeated and re-alleged with the same force and effect as if fully set forth herein.

62.   Admits that RBM is the listed registrant of the Domain Name "rbmtechnologies.com" and the email addresses associated with such Domain Name, but denies the remaining allegations contained in paragraph 62 of the Amended Complaint.

63.   Denies the allegations contained in paragraph 63 of the Amended Complaint.

64.   Denies the allegations contained in paragraph 64 of the Amended Complaint.

65.   Denies the allegations contained in paragraph 65 of the Amended Complaint.

## COUNT III – MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION AGAINST LASH

66.   Paragraphs 1 through 65 are hereby repeated and re-alleged with the same force and effect as if fully set forth herein.

9

67.     Denies the allegations contained in paragraph 67 of the Amended Complaint.

68.     Denies the allegations contained in paragraph 68 of the Amended Complaint.

69.     Denies the allegations contained in paragraph 69 of the Amended Complaint.

70.     Denies the allegations contained in paragraph 70 of the Amended Complaint.

71.     Denies the allegations contained in paragraph 71 of the Amended Complaint.

72.     Denies the allegations contained in paragraph 72 of the Amended Complaint.

73.     Denies the allegations contained in paragraph 73 of the Amended Complaint.

74.     Denies the allegations contained in paragraph 74 of the Amended Complaint.

75.     Denies the allegations contained in paragraph 75 of the Amended Complaint.


## COUNT IV – DECLARATORY JUDGMENT AGAINST LASH

76.     Paragraphs 1 through 75 are hereby repeated and re-alleged with the same force and effect as if fully set forth herein.

77.     Admits the allegations contained in paragraph 77 of the Amended Complaint.

78.     Admits the allegations contained in paragraph 78 of the Amended Complaint.

79.     Denies the allegations contained in paragraph 79 of the Amended Complaint.

80.     Admits the allegations contained in paragraph 80 of the Amended Complaint.

81.     Admits the allegations contained in paragraph 81 of the Amended Complaint.


## COUNT V – VIOLATION OF G.K. C. 272 § 99 (Q) AGAINST LASH

82.     Paragraphs 1 through 81 are hereby repeated and re-alleged with the same force and effect as if fully set forth herein.

83.     Denies the allegations contained in paragraph 83 of the Amended Complaint.

10

84.     Admits the allegations contained in paragraph 84 of the Amended Complaint.

85.     Denies the allegations contained in paragraph 85 of the Amended Complaint.

86.     Denies the allegations contained in paragraph 86 of the Amended Complaint.

87.     Denies the allegations contained in paragraph 87 of the Amended Complaint.

## COUNT VI – PROCURING BREACH OF CONTRACT AGAINST SAVONIX

88.     [NOT APPLICABLE TO LASH]

89.     [NOT APPLICABLE TO LASH]

90.     [NOT APPLICABLE TO LASH]

91.     [NOT APPLICABLE TO LASH]

92.     [NOT APPLICABLE TO LASH]

93.     [NOT APPLICABLE TO LASH]

## PLAINTIFF'S PRAYER FOR RELIEF

94.     Defendant Lash denies each and every allegation contained in the Prayer for

Relief ("WHEREFORE" clause), paragraphs lettered A through E, following paragraph 93 of the

Sixth Count of the Amended Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

95.     The Amended Complaint and each purported cause of action contained therein

fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

96.    Plaintiff's claims based on the alleged Contract, i.e., the written employment agreement allegedly entered into by Plaintiff and Defendant on or about August 1, 2001, are barred by the failure of consideration by Plaintiff in exchange for Defendant's alleged promises to perform. Plaintiff never wanted to incur the costs of paying taxes and other costs related to payroll that would be required to hire Defendant as an employee. Because Plaintiff never wanted to incur such costs, Plaintiff's promise to hire Defendant as an employee in the Contract was illusory at best and Plaintiff's claims based on such Contract fail for lack of consideration.

## THIRD AFFIRMATIVE DEFENSE

97.    In the event that the Court ultimately determines that the Contract was validly entered into, i.e., that the parties did in fact enter into a binding written employment agreement on or about August 1, 2001, Plaintiff's claims are barred by the fact that Plaintiff is in material breach of the alleged Contract. Plaintiff failed to meet and satisfy several of the material terms of such Contract and such failure to perform could not convert Defendant's status as an independent contractor for Plaintiff into that of an employee of Plaintiff. Accordingly, Plaintiff's claims are barred in whole or in part due to Plaintiff's material breach of the alleged Contract.

## FOURTH AFFIRMATIVE DEFENSE

98.    In the event that the Court ultimately determines that the Contract was validly entered into, i.e., that the parties did in fact enter into a binding written employment agreement on or about August 1, 2001, Plaintiff's claims are barred by the fact that Plaintiff failed to meet and satisfy several of the material terms of such Contract and such failure to perform could not convert Defendant's status as an independent contractor for Plaintiff into that of an employee of Plaintiff. Accordingly, Plaintiff's claims are barred in whole or in part by the doctrines of laches, estoppel, acquiescence and unclean hands, because Plaintiff is in material breach of the alleged Contract.

## FIFTH AFFIRMATIVE DEFENSE

99.    In the event that the Court ultimately determines that the Contract was validly entered into, i.e., that the parties did in fact enter into a binding written employment agreement on or about August 1, 2001, and that Defendant is bound under certain provisions of the Contract, the Defendant cannot be held to the Prohibited Competition clause because it is unreasonable in all respects.    Accordingly, the Plaintiff may not enforce the Prohibited Competition clause because it goes beyond the permissible, reasonable bounds of such provisions.

## COUNTERCLAIMS

### Facts Material To Defendant's Counterclaims
### (As Against RBM Technologies, Inc.)

100.    Defendant/Counterclaim Plaintiff Lash is an experienced and highly skilled computer programmer and software developer who has the ability to develop, create and author original source code for software products.  Lash is also skilled at providing computer support services, such as the creation of computer graphic designs, network administration and general Internet technology administration.  Based upon his varied computer experience, Lash has been in demand as a consultant for his computer programming and software development abilities.

101.    Upon information and belief, Plaintiff/Counterclaim Defendant RBM is a corporation which is in the business of marketing software products to third parties.

102.    On or about May 1, 2001, Plaintiff/Counterclaim Defendant RBM hired Lash as an independent contractor to provide computer consulting services to RBM Technologies and its sister corporation RBM Systems.  Specifically, Plaintiff/Counterclaim Defendant RBM hired Lash on an ongoing basis to be paid an hourly fee of $35 to assist with general software

13

development, the creation of graphic designs, networking administration and general Internet technologies administration. The parties did not put this arrangement into writing and they did not consider, discuss, or sign a separate writing governing the copyright ownership of any software developed by Lash.

103.    At all times while Lash was an independent contractor for Plaintiff/Counterclaim Defendant RBM, Lash was paid by Plaintiff/Counterclaim Defendant RBM's sister corporation RBM Systems.

104.    Shortly after hiring Lash as a consultant on an independent contractor basis, Plaintiff/Counterclaim Defendant RBM showed him a mock-up of a website that displayed pictures of the interior of bank branches in the Quicktime VR software format and static images of promotional materials (the "Mock-up"). Plaintiff/Counterclaim Defendant RBM did not yet have a corresponding software program for the Mock-up and sought Lash's skills as a computer programmer and software developer to create the software to make the Mock-up an actual software program.

105.    Upon    information    and    belief,    the    Mock-up    was    developed    for Plaintiff/Counterclaim Defendant RBM by an independent contractor, Ramsey Badawi.

106.    Upon information and belief, the Mock-up was never presented to any prospective clients.

107.    During May and June 2001, Lash developed and authored the source code for the Software on an independent contractor basis. The Software essentially brought the Mock-up and static images to life. Lash developed the Software as an independent contractor and it contained only his original ideas, source code and writing.

14

108.    The Software, in its current form, is over four hundred (400) pages in length, all originally and independently created and authored by Lash.

109.    On or about July 2001, Lash completed the fully-functioning application for the Software.  During this month, adjustments to Lash's hourly rate and payment structure were made by Plaintiff/Counterclaim Defendant RBM without any notice to Defendant/Counterclaim Plaintiff Lash.

110.    On or about late July 2001 or early August 2001, Lash and Plaintiff/Counterclaim Defendant RBM discussed a possible weekly salary payment structure, which would have provided Lash with a weekly salary of $1,350.    Following these discussions, Plaintiff/Counterclaim Defendant RBM drafted an engagement letter that allegedly set forth the terms of Lash's proposed future employment relationship with Plaintiff/Counterclaim Defendant RBM (referred to herein and throughout Lash's Answer to Plaintiff/Counterclaim Defendant RBM's Complaint as the "Contract").  (See Plaintiff's Verified Complaint, Exhibit A).

111.    The Contract drafted by Plaintiff/Counterclaim Defendant RBM expressly provided that Lash would not become an employee of Plaintiff/Counterclaim Defendant RBM upon execution of the Contract.

112.    The    Contract    expressly    provided    that    Lash's    employment    by Plaintiff/Counterclaim Defendant RBM would only go into effect at an unspecified point in time in the future when certain conditions precedent, some express, some implied, were satisfied.

113.    The Contract expressly provided that until certain conditions precedent were satisfied, Lash was still to be considered and treated as an independent contractor.

114.    The Contract was executed by the parties in September, 2001.

15

115.    However, Lash never became an employee of Plaintiff/Counterclaim Defendant RBM because the conditions precedent were never satisfied.

116.    Plaintiff/Counterclaim Defendant RBM continued to pay Lash under the pre-existing independent contractor terms, with all such payments issued by Plaintiff/Counterclaim Defendant RBM's sister corporation RBM Systems, whereby Lash provided his consulting services to Plaintiff/Counterclaim Defendant RBM on a weekly retainer fee basis.

117.    Plaintiff/Counterclaim Defendant RBM never agreed upon an annual salary with Lash.

118.    Plaintiff/Counterclaim Defendant RBM never satisfied the other implied conditions precedent to the enforcement of the Contract.

119.    On several occasions after the signing of the alleged Contract, Lash inquired as to when he would be placed on Plaintiff/Counterclaim Defendant RBM's payroll as an employee and was informed that this would not occur, in abrogation of the alleged Contract.

120.    Plaintiff/Counterclaim Defendant RBM has never withheld income taxes or FICA from payments it made to Lash nor has it paid the employer's share of payroll taxes as would have been required of Plaintiff/Counterclaim Defendant RBM had it hired Lash as an employee.

121.    Plaintiff/Counterclaim Defendant RBM has at all times represented to the federal and state governments that Lash is not its employee.

122.    Plaintiff/Counterclaim Defendant RBM has at all times indicated in its workers compensation returns that Lash is not its employee.

123.    Plaintiff/Counterclaim Defendant RBM has never held Lash out as its employee.

124.    During October 2001, Lash continued to develop and revise the source code for the Software, with the focus on developing a final commercial product. At the same time, Lash

16

continued to provide general computer consulting services to Plaintiff/Counterclaim Defendant RBM's sister corporation, RBM Systems.

125.    From December 2001 until January 2002, Lash continued to provide consulting services to RBM Systems on a weekly retainer fee basis.

126.    In January 2002, Lash took a week-long vacation.    Plaintiff/Counterclaim Defendant RBM did not pay Lash during this vacation.

127.    From February 2002 through July 2002, Lash provided the majority of his consulting services for the benefit of RBM Systems.

128.    On or about June 7, 2002, Plaintiff/Counterclaim Defendant RBM informed Lash that Plaintiff/Counterclaim Defendant RBM would be paying Lash a bonus by paying Lash for the Memorial Day holiday on May 27, 2002.    Such bonus implied that Plaintiff/Counterclaim Defendant RBM was paying Lash on a daily, rather than weekly basis, which Plaintiff/Counterclaim Defendant RBM had suggested as a better model than hourly fees.

129.    During the latter half of 2003, Lash and Plaintiff/Counterclaim Defendant RBM began to have numerous disagreements regarding the future prospects and future financial success of the Software and the possibility of bringing on a salesperson to specifically market the Software.

130.    In or about November 2003, Lash presented Plaintiff/Counterclaim Defendant RBM with an expense sheet for the cost of a computer and various software programs purchased to aid with the development and creation of the Software.    Plaintiff/Counterclaim Defendant RBM refused to reimburse Lash for these items.

131.    On December 8, 2003, Lash provided Plaintiff/Counterclaim Defendant RBM with written notice terminating his relationship with Plaintiff/Counterclaim Defendant RBM and

17

putting Plaintiff/Counterclaim Defendant RBM on further notice of Lash's claim of ownership rights, including copyright ownership in and to the Software. (A true and correct copy of the December 8, 2003 letter is attached to Defendant's Answer to the Verified Complaint as Exhibit 1).

132.    On or about December 23, 2003, Lash discovered that someone had logged into Plaintiff/Counterclaim Defendant RBM's computer and email communications system and had been sending and receiving email at Lash's account without Lash's consent or knowledge.

133.    Upon information and belief, it was anticipated and understood by both Plaintiff/Counterclaim Defendant RBM and Lash, at the time Lash gave notice of his intent to terminate his relationship with Plaintiff/Counterclaim Defendant RBM, that Lash would be able to access his email communications at RBM for several weeks thereafter in order to inform clients of his departure.

134.    Upon information and belief, the unauthorized party who accessed Lash's email account on Plaintiff/Counterclaim Defendant RBM's network is associated with Plaintiff/Counterclaim Defendant RBM and was attempting to make changes to domain name registrations held by Plaintiff/Counterclaim Defendant RBM by improperly assuming Lash's identity.

135.    Lash acted to reset certain passwords affiliated with the domain names registered in Plaintiff/Counterclaim Defendant RBM's name out of concern that someone, namely an unauthorized third party, was illegally assuming his identity and attempting to damage or steal Plaintiff/Counterclaim Defendant RBM's domain name registrations.

136. Upon information and belief, the improper access of Lash's email account by a third party was at Plaintiff/Counterclaim Defendant RBM's direction and acted to prevent Lash from receiving all of his email communications sent to that account.

137. Upon information and belief, Plaintiff/Counterclaim Defendant RBM has copied and distributed and is continuing to copy and distribute exact copies of Lash's Software to various financial institutions and retail establishments, including Harris Bank, Rockland Trust, Provident Bank, BMO Financial and AT&T Wireless.

138. Upon information and belief, Plaintiff/Counterclaim Defendant RBM has marketed and sold and is continuing to market and sell exact copies of Lash's Software to various financial institutions and retail establishments, including Harris Bank, Rockland Trust, Provident Bank, BMO Financial and AT&T Wireless, thereby improperly representing Lash's software as its own and improperly profiting off of the marketing and selling of Lash's software, without compensating Lash for such unauthorized use.

139. Upon information and belief, Plaintiff/Counterclaim Defendant RBM's conduct with respect to the copying, distributing, marketing and selling of Lash's Software to third parties is a disclosure of Lash's trade secrets in the Software and a violation of Lash's copyrights therein.

140. At all times relevant hereto, Lash has complied in all respects with the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

141. On or about December 2, 2003, Lash filed the necessary paperwork and fee to apply for the exclusive rights and privileges in and to the copyrights in the Software under the Copyright Act, 17 U.S.C. §§ 101, *et seq*. His registration in the Software was issued December 12, 2003.

19

142.    Lash has never authorized Plaintiff/Counterclaim Defendant RBM to copy, distribute, market and/or sell the Software.

143.    After termination with Plaintiff/Counterclaim Defendant RBM, Defendant Lash wrote two new software programs, Uplink and Upsell.

144.    The Uplink and Upsell products are neither copies of nor substantially similar to the Merchandising Manager Software that is in dispute.

145.    Lash has the exclusive right to possess and control the marketing and selling of the software programs Uplink and Upsell.

146.    Lash created Savonix to exploit the Uplink and Upsell software.

147.    By and through Lash, Savonix holds the right to market and sell the software programs Uplink and Upsell.

148.    Savonix and Semaphore, Inc., entered into a relationship based on the software programs Uplink and Upsell.

149.    On or about November 10, 2004, without right or justifiable cause, Plaintiff/Counterclaim Defendant RBM intentionally interfered with Savonix's contractual relationship with Semaphore, Inc., by sending a letter to Semaphore, Inc., demanding they cease and desist from using or marketing Lash's Uplink and Upsell software programs. A true and correct copy of the November 10, 2004 letter is attached hereto as Exhibit 1.

150.    RBM's actions were taken in reckless disregard of the rights of Lash in that RBM never investigated the software Uplink and Upsell prior to sending the letter to Semaphore, Inc.

151.    Lash has no adequate remedy at law.

## FIRST COUNTERCLAIM

## DECLARATORY JUDGMENT THAT CONTRACT IS VOID

152.    Defendant/Counterclaim Plaintiff repeats, re-alleges and incorporates by reference the responses contained in paragraphs 1 through 99 as though fully set forth herein and repeats and re-alleges paragraphs 100 through 151 of the Counterclaim as though fully set forth herein.

153.    Defendant/Counterclaim Plaintiff Lash and Plaintiff/Counterclaim Defendant RBM dispute whether the Contract allegedly entered into by the parties to govern an employment relationship is valid.

154.    Pursuant to G.L. c. 231A, Defendant/Counterclaim Plaintiff Lash alleges this cause of action for declaratory relief seeking to have this Court declare that the Contract is void due to Plaintiff/Counterclaim Defendant RBM's failure to perform certain conditions precedent to the taking effect and enforceability of the Contract.

155.    An actual controversy has arisen between Defendant/Counterclaim Plaintiff Lash and Plaintiff/Counterclaim Defendant RBM regarding the enforceability and effect of this alleged Contract and the controversy is justiciable in character.

## SECOND COUNTERCLAIM

### BREACH OF CONTRACT

156.    Defendant/Counterclaim Plaintiff repeats, re-alleges and incorporates by reference the responses contained in paragraphs 1 through 99 as though fully set forth herein and repeats and re-alleges paragraphs 100 through 151 and 153 through 155 of the Counterclaims as though fully set forth herein.

157.    As an alternative claim to Defendant/Counterclaim Plaintiff Lash's First Counterclaim seeking a declaratory judgment that the alleged Contract is void, if the Court determines that Plaintiff/Counterclaim Defendant RBM and Lash entered into a binding employment Contract on or about August 1, 2001, it is in fact Plaintiff/Counterclaim Defendant RBM, and not Lash, that materially breached the alleged Contract because Plaintiff/Counterclaim Defendant RBM failed to perform certain conditions precedent to the

21

Contract and therefore failed to materially perform the Contract.

158.    Accordingly, if the Court determines that Plaintiff/Counterclaim Defendant RBM and Defendant/Counterclaim Plaintiff Lash entered into a binding Contract on or about August 1, 2001, Lash properly anticipatorily repudiated the Contract by giving notice of his resignation due to Plaintiff/Counterclaim Defendant RBM's failure to perform certain conditions precedent under the Contract and Lash has suffered damages as a result of Plaintiff/Counterclaim Defendant RBM's material breach of that Contract, in an amount to be proven at trial.

## THIRD COUNTERCLAIM

## MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION (M.G.L. c. 93 § 42)

159.    Defendant/Counterclaim Plaintiff repeats, re-alleges and incorporates by reference the responses contained in paragraphs 1 through 99 as though fully set forth herein and repeats and re-alleges paragraphs 100 through 151, 153 through 155, and 157 through 158 of the Counterclaims as though fully set forth herein.

160.    Defendant/Counterclaim Plaintiff Lash possesses and has the exclusive right to control exploitation of the Software Program he authored while working as an independent contractor for Plaintiff/Counterclaim Defendant RBM, and he has taken appropriate measures to protect such trade secrets and confidential information.

161.    By marketing, selling and distributing his Software Program to third parties, without his authorization and without proper remuneration to Lash, Plaintiff/Counterclaim Defendant RBM has carried away, misappropriated, and/or disclosed Lash's confidential information and/or trade secrets in the Software Program to third parties in violation of G.L. 93, §42, and used it for Plaintiff/Counterclaim Defendant RBM's own benefit.

162.    As a result of Plaintiff/Counterclaim Defendant RBM's violations of G.L. c. 93, §42, Lash has suffered and continues to suffer substantial damages.

22

163.   This is a cause of action for the taking of trade secrets at common law and under G.L. c. 93 § 42A.

## FOURTH COUNTERCLAIM

### VIOLATION OF G.L.C. 272 § 99 (Q)

164.   Defendant/Counterclaim Plaintiff repeats, re-alleges and incorporates by reference the responses contained in paragraphs 1 through 99 as though fully set forth herein and repeats and re-alleges paragraphs 100 through 151, 153 through 155, 157 through 158, and 160 through 163 of the Counterclaims as though fully set forth herein.

165.   A third party, using the email account usr4020@rbmtechnologies.com, directed by Plaintiff/Counterclaim Defendant RBM, has accessed and continues to access Lash's email account without his authorization and has intercepted and continues to intercept email communications that were and are addressed to and intended for use by Lash.

166.   The email communications constituted "wire communications" as defined in G.L. c. 277 § 99 (B) (1).

167.   Plaintiff/Counterclaim Defendant RBM's interception of Lash's email, through its own conduct or the conduct of the third party under Plaintiff/Counterclaim Defendant RBM's control and direction, violated Lash's property or privacy interests in the contents of the emails.

168.   This is a cause of action for violation of G.L. c. 272 § 99 (Q).

## FIFTH COUNTERCLAIM

### VIOLATION OF ELECTRONICS COMMUNICATION PRIVACY ACT
### 18 U.S.C. §§ 2510 et seq.

169.   Defendant/Counterclaim Plaintiff repeats, re-alleges and incorporates by reference

23

the responses contained in paragraphs 1 through 99 as though fully set forth herein and repeats and

re-alleges paragraphs 100 through 151, 153 through 155, 157 through 158, 160 through 163, and

165 through 168 of the Counterclaims as though fully set forth herein.

170.    A third party, directed by Plaintiff/Counterclaim Defendant RBM or with

Plaintiff/Counterclaim Defendant RBM's permission, has accessed Lash's email account without

his authorization and has intercepted email communications that were addressed to and intended

for use by Lash.

171.    A third party, directed by Plaintiff/Counterclaim Defendant RBM or with

Plaintiff/Counterclaim Defendant RBM's permission, attempted to change domain name

registrations belonging to Plaintiff/Counterclaim Defendant RBM by illegally assuming Lash's

identity, by sending email communications from Lash's email account to the registrar of those

domain names, Dotster, Inc., and by representing to Dotster, Inc., that such third party was really

Lash.

172.    The email communications constituted "wire communications" as defined in 18

U.S.C. §§ 2510 et seq.

173.    Plaintiff/Counterclaim Defendant RBM's interception of Lash's email, through its

own conduct or the conduct of the third party under Plaintiff/Counterclaim Defendant RBM's

control and direction, violated Lash's property or privacy interests in the contents of the emails.


### SIXTH COUNTERCLAIM

### UNFAIR COMPETITION
### (M.G.L. c. 93A)

174.    Defendant/Counterclaim Plaintiff repeats, re-alleges and incorporates by reference

the responses contained in paragraphs 1 through 99 as though fully set forth herein and repeats

and re-alleges paragraphs 100 through 151, 153 through 155, 157 through 158, 160 through 163, 165 through 168, and 170 through 173 of the Counterclaims as though fully set forth herein.

175. Defendant/Counterclaim Plaintiff Lash has the right to possession of the Software Program he authored while working as an independent contractor for Plaintiff/Counterclaim Defendant RBM.

176. By marketing, selling and distributing his Software Program to third parties, without his authorization and without proper remuneration to Lash, Plaintiff/Counterclaim Defendant RBM has unfairly competed with Lash by misrepresenting to such third parties and possible clients that Plaintiff/Counterclaim Defendant RBM owns the Software Program. Plaintiff/Counterclaim Defendant RBM's deceptive and unfair conduct was wilfull and knowing.

177. As a result of Plaintiff/Counterclaim Defendant RBM's conduct, it has unfairly competed with Lash and has prevented Lash from marketing, selling and distributing his Software Program to third parties.

178. Plaintiff/Counterclaim Defendant RBM's unfair and deceptive conduct caused Lash significant damages. Plaintiff/Counterclaim Defendant RBM is liable to Lash for treble damages and his attorney's fees and costs.

## SEVENTH COUNTERCLAIM

### COPYRIGHT INFRINGEMENT

179. Defendant/Counterclaim Plaintiff repeats, re-alleges and incorporates by reference the responses contained in paragraphs 1 through 99 as though fully set forth herein and repeats and re-alleges paragraphs 100 through 151, 153 through 155, 157 through 158, 160

25

through 163, 165 through 168, 170 through 173, and 175 through 178 of the Counterclaims as though fully set forth herein.

180.     Plaintiff/Counterclaim Defendant RBM has copied, advertised, sold, offered to sell and/or distributed unauthorized copies of Lash's copyright-protected Software.

181.     Plaintiff/Counterclaim Defendant RBM's aforementioned acts constitute infringement of Lash's Software, in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

182.     Lash is informed and believes and therefore alleges that Plaintiff/Counterclaim Defendant RBM's reproduction, sale and distribution of the Software was and is deliberate, willful and without regard to Lash's proprietary rights.

183.     Plaintiff/Counterclaim Defendant RBM's copyright infringement has caused, and will continue to cause, Lash to suffer substantial injuries, loss and damage to its proprietary and exclusive rights to the copyrights in the Software and further, has damaged Lash's business reputation and goodwill, diverted his trade and caused a loss of profits, all in an amount not yet ascertained.

184.     Plaintiff/Counterclaim Defendant RBM's copyright infringement, and the threat of continuing infringement, has caused, and will continue to cause, Lash repeated and irreparable injury. It would be difficult to ascertain the amount of money damages that would afford Lash adequate relief at law for Plaintiff/Counterclaim Defendant RBM's acts and continuing acts. In addition, Lash's remedy at law is not adequate to compensate him for the injuries already inflicted and further threatened by Plaintiff/Counterclaim Defendant RBM.    Therefore, Plaintiff/Counterclaim Defendant RBM should also be restrained and enjoined pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

185.     Lash has been unable to determine the exact value of the copyright-protected

26

Software and therefore, has been unable to ascertain the resulting damages due him under the Copyright Act. Plaintiff/Counterclaim Defendant RBM has itself valued its current deals with consumers of the Software at $1,000,000 over the next two years and Plaintiff/Counterclaim Defendant RBM has also suggested that the value of Plaintiff/Counterclaim Defendant RBM is between $3 and $6 million dollars, in large part based upon the value of Defendant/Counterclaim Plaintiff Lash's Software, which Plaintiff/Counterclaim Defendant RBM unjustifiably claims as an asset of Plaintiff/Counterclaim Defendant RBM.   Accordingly, Lash is entitled to an accounting from Plaintiff/Counterclaim Defendant RBM of all revenue derived by Plaintiff/Counterclaim Defendant RBM from sale and/or distribution of the Software, including all revenue diverted to Plaintiff/Counterclaim Defendant RBM's sister company, RBM Systems.

## EIGHTH COUNTERCLAIM

### DECLARATORY JUDGMENT THAT LASH IS THE OWNER OF THE COPYRIGHT IN THE SOFTWARE

186.    Defendant/Counterclaim Plaintiff repeats, re-alleges and incorporates by reference the responses contained in paragraphs 1 through 99 as though fully set forth herein and repeats and re-alleges paragraphs 100 through 151, 153 through 155, 157 through 158, 160 through 163, 165 through 168, 170 through 173, 175 through 178, and 180 through 185 of the Counterclaims as though fully set forth herein.

187.    Lash began creating, developing and writing the source code for the Software while working for Plaintiff/Counterclaim Defendant RBM as an independent contractor, significantly, well before even the date when Plaintiff/Counterclaim Defendant RBM alleges the Contract was entered into by the parties.

188.   Even after the parties entered into the Contract, certain conditions precedent existed that had to be satisfied before Lash's employment under the Contract took effect. Plaintiff/Counterclaim Defendant RBM never satisfied these implied conditions precedent and at all times continued to treat Lash as though he were an independent contractor for Plaintiff/Counterclaim Defendant RBM and not an employee of Plaintiff/Counterclaim Defendant RBM.

189.   The parties never discussed nor entered into any other written agreement that classifies Lash's relationship with Plaintiff/Counterclaim Defendant RBM as that of work-made-for-hire under the United States Copyright Act.

190.   The allegation by Plaintiff/Counterclaim Defendant RBM that it owns the copyright to the Software and its filing of a state action in the Commonwealth of Massachusetts alleging conversion of such Software and the theft of alleged trade secrets derived from Plaintiff/Counterclaim Defendant RBM's alleged ownership has caused, and will continue to cause, irreparable harm to Lash, the Software and to Lash's business reputation and substantial goodwill represented thereby, and said acts and damage will continue unless restrained by this Court.  Lash, therefore, seeks a declaratory judgment, pursuant to G.L. c. 231A, that it is the owner of the copyright to the Software.

191.   Lash has no adequate remedy at law.

## NINTH COUNTERCLAIM

### ACCOUNTING

192.   Defendant/Counterclaim Plaintiff repeats, re-alleges and incorporates by reference the responses contained in paragraphs 1 through 99 as though fully set forth herein and repeats

28

and re-alleges paragraph 100 through 151, 153 through 155, 157 through 158, 160 through 163, 165 through 168, 170 through 173, 175 through 178, 180 through 185, and 187 through 191 of the Counterclaims as though fully set forth herein.

193.    As a result of the actions of Plaintiff/Counterclaim Defendant RBM complained of herein, Lash has been unable to determine the amounts that Lash has lost as a result of these actions.

194.    Accordingly, Lash is entitled to an accounting from Plaintiff/Counterclaim Defendant RBM of all revenue derived by Plaintiff/Counterclaim Defendant RBM by the unauthorized use of Lash's Software.

## TENTH COUNTERCLAIM

### INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

195.    Defendant/Counterclaim Plaintiff repeats, re-alleges and incorporates by reference the responses contained in paragraphs 1 through 99 as though fully set forth herein and repeats and re-alleges paragraphs 100 through 151, 153 through 155, 157 through 158, 160 through 163, 165 through 168, 170 through 173, 175 through 178, 180 through 185, 187 through 191, and 193 through 194 of the Counterclaims as though fully set forth herein.

196.    Plaintiff/Counterclaim Defendant RBM has intentionally interfered with Lash's contractual relationship with Semaphore, Inc.

197.    As a result of Plaintiff/Counterclaim Defendant RBM's interference with a contractual relationship, Lash has suffered and continues to suffer damages.

29

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaim Plaintiff Lash prays for judgment against Plaintiff/Counterclaim Defendant RBM as follows:

(A)    That the Court enter judgment in Defendant/Counterclaim Plaintiff Lash's favor against Plaintiff/Counterclaim Defendant RBM;

(B)    That the Court issue a judicial declaration on Defendant/Counterclaim Plaintiff Lash's First Counterclaim pursuant to G.L. c. 231A that the alleged Contract is void for lack of consideration, or in the alternative, should the Court find the Contract to be valid and binding, Plaintiff/Counterclaim Defendant RBM materially breached the Contract and it is therefore: (i) unenforceable as the result of material breach; (ii) unenforceable as the result of material breach, thereby barring Plaintiff/Counterclaim Defendant RBM's claims in whole or in part by the doctrines of laches, estoppel, acquiescence and unclean hands; and/or (iii) unenforceable, in so far as the "Prohibited Competition" clause is unreasonable;

(C)    On the Eighth Counterclaim, that the Court issue a judicial declaration pursuant to G.L. c. 231A that Lash is the owner of the copyright in the Software;

(D)    That Defendant/Counterclaim Plaintiff Lash be awarded damages for Plaintiff/Counterclaim Defendant RBM's (i) breach of contract; (ii) misappropriation of trade secrets and confidential information; (iii) unfair competition; and (iv) intentional interference with Lash's relationship with Semaphore, Inc.; in an amount to be determined at trial, together with Plaintiff/Counterclaim Defendant RBM's profits derived from its unlawful misappropriation and disclosure of trade secrets in Lash's Software Program and

30

its unfair competition with Lash;

(E)     That Lash be awarded damages for Plaintiff/Counterclaim Defendant's copyright infringement, either: (i) actual damages in an amount to be determined at trial, together with Plaintiff/Counterclaim Defendant's profits derived from its infringement of the Software; or (ii) statutory damages for each act of infringement in the amount provided by law, as set forth in 17 U.S.C. § 504, at Lash's election before the entry of a final judgment, together with prejudgment and post-judgment interest;

(F)     That the Court fine Plaintiff/Counterclaim Defendant for its violations of G.L. c. 272 § 99 (Q) and 18 U.S.C. §§ 2510 et seq., pursuant to the fine structure of the respective statutes;

(G)     That the Court issue an Order requiring Plaintiff/Counterclaim Defendant to provide an accounting of all revenue derived to date from the sale and/or distribution of the Software;

(H)     That the Court issue a permanent injunction enjoining Plaintiff/Counterclaim Defendant and its officers, agents, servants, representatives, employees and all others in concert or participation with them, directly or indirectly, from infringing, inducing others to infringe, or contributing to the infringement of the Software;

(I)     That the Court issue an Order requiring Plaintiff/Counterclaim Defendant to destroy all infringing copies of the Software at the conclusion of the present matter;

(J)     That the Court award Lash double or treble damages pursuant to M.G.L. c. 93A and M.G.L. c. 93, § 42;

31

(K)    That the Court award Lash his costs and reasonable attorneys' fees and expenses

in accordance with M.G.L. c. 93A, M.G.L. c. 93, § 42, and 35 U.S.C. § 285; and

(L)    That the Court award Lash such other and further relief as the circumstances of

this case may require and as this Court may deem just and proper.

Dated:

November 24, 2004

Respectfully Submitted,

ALBERT L. LASH, IV
By his Attorneys,

David Fanikos, BBO No. 564303
Christopher M. Waterman, BBO# 641190
DEMEO & ASSOCIATES, P.C.
One Lewis Wharf
Boston, MA 02110
Telephone: (617) 263-2600
Facsimile: (617) 263-2300

GRIMES & BATTERSBY, LLP
Charles W. Grimes, Esq.
Michael Ryan Patrick, Esq.
488 Main Avenue
Norwalk, CT 06851
Telephone: (203) 849-8300
Facsimile: (203) 849-9300

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Defendant/Counterclaim

Plaintiff's Answer, Affirmative Defenses and Counterclaims to Plaintiff/Counterclaim

Defendant's Amended Complaint, has been served upon Plaintiff/Counterclaim Defendant RBM

Technologies, Inc., on this 24th day of November 2004, by hand to:


George A. McLaughlin, Esq.
THE MCLAUGHLIN BROTHERS, P.C.
28 State Street, 31st Floor
Boston, MA  02109


Christopher M. Waterman, Esq.

The Law Offices of
# THE McLAUGHLIN BROTHERS, P.C.
28 State Street, 31st Floor, Boston, MA 02108
Phone: (617) 523-7165, Fax: (617) 227-5240
E-mail: lawyers@mclaughlinbrothers.com

## FACSIMILE TRANSMISSION SHEET

**DATE:** 11.10.04  **TIME:** 2:15 p.m.

**TO:** James Gilmartin

**FAX No.:** 508-893-9591

**FROM:** George McLaughlin

**NUMBER OF PAGES:** 4  (including this cover sheet).

If you do not receive all the pages, please call us as soon as possible.

### NOTES/DESCRIPTION:

Please see attached. Originals will be sent to you via Federal Express.

Thank you.

### CONFIDENTIALITY NOTICE

The document(s) accompanying this facsimile transmission sheet contain(s) information from The McLaughlin Brothers, LLP that is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this facsimiled information is strictly prohibited. If you have received this communication in error, please notify us by telephone immediately at (617) 523-7165 and return the original message to us at the above address via United States Postal Service.

LAW OFFICES OF
# THE McLAUGHLIN BROTHERS, P.C.

*One Beacon Street, 17th Floor*
*Boston, MA 02108*
*Telephone (617) 523-7165*
*Facsimile (617) 227-5240*
*E-Mail: lawyers@mclaughlinbrothers.com*

November 10, 2004

*Sent Via Facsimile (508) 893-9591*
*and Federal Express*

James Gilmartin, President
Semaphore, Inc. ⋯
100 Kuniholm Drive
Holliston, MA  01701

Re:  Notice of Interference by Semaphore, Inc. with Contractual Relations between
RBM Technologies, Inc. and Albert L. Lash, IV and Savonix Corporation

Dear Mr. Gilmartin:

I represent RBM Technologies, Inc. ("RBM").  As I am sure you are aware, RBM

is involved in litigation against Albert L. Lash, IV ("Lash") as a result of Lash's breach

of an employment contract between him and RBM among other issues.  Albert Lash is

the owner and sole corporate officer of Savonix Corporation ("Savonix"), with whom

Semaphore, Inc. ("Semaphore") has partnered in a software marketing venture.

This letter is to notify you that Semaphore's relationship with Savonix is

interfering with RBM's contractual rights with Lash.  Pursuant to an August 1, 2001

engagement letter between RBM and Lash (the "Contract"), a copy of which is enclosed

herewith, Lash agreed that for a period of two (2) years following termination of his

employment, he would not, without the prior written consent of RBM:

"for (him)self or on behalf of any other, directly or indirectly, either as principal,
agent, stockholder, employee, consultant, representative or in any other capacity,

own, manage, operate or control or be concerned, connected or employed by, or otherwise associate in any manner with, engage in or have a financial interest in any business which is directly or indirectly competitive with the business of (RBM) within the United States of America; or either individually or on behalf of or through any third party, solicit, divert or appropriate or attempt to solicit, divert or appropriate, for the purpose of competing with (RBM), any customers, clients or patrons of (RBM), or any prospective customers, clients or patrons with respect to which (RBM) has developed or made a sales presentation (or similar offering of services)."

Lash terminated his employment with RBM on December 8, 2003.

Pursuant to the Contract, Lash also agreed not to disclose, during or after his

employment:

"confidential and proprietary information concerning the administrative, management, financial, technical and marketing activities of (RBM), including, but not limited to, software, technical data, algorithms, formulae, specialized programs and codes, customer lists, procedure, processes, plans, strategies, costs and financial data and other trade secrets of a proprietary nature, including research, development and knowledge regarding (RBM's) services and products." (Emphasis added)

RBM has recently learned that Lash, through Savonix, is attempting to market

two (2) software programs named Uplink and Upsell, which are designed to allow

management via the internet of real estate floor plans, store front elevations, photographs,

virtual reality movies and to allow companies to initiate, send and manage marketing and

other information to remote locations via the internet. Uplink and Upsell are merely

renamed versions of software developed by RBM known as Merchandising Manager.

RBM is currently marketing software that provides the same service to companies as

Uplink and Upsell. By marketing Uplink and Upsell, Lash and Savonix are competing

against RBM in violation of the Contract and are disclosing information regarding

RBM's software in violation of the Contract.

RBM has also recently learned that Semaphore has partnered with Savonix to

market Uplink and Upsell. In a press release dated October 20, 2004, Semaphore has