# EXHIBIT D

 (a) your death or physical or mental incapacity;

 (b) Immediate termination by the Company upon written notice for "Cause", which shall include (i) illegal, dishonest or negligent conduct which constitutes a breach of your covenants and obligations under this letter agreement or under any applicable legal principle, or which involves funds or other assets of the Company, (ii) any conduct which is likely to have a material adverse effect upon the goodwill or business position of the Company, or (iii) your failure to carry out your duties to the Company hereunder.

 (c) Termination by either party, for any reason, upon not less than thirty (30) days' notice to the other.

Compensation

Prior to commencement of your full-time employment as Vice President and Managing Director, Technology, you will be compensated under the current hourly arrangement. Commencing with your full-time employment, the Company will pay you an annual salary in an amount to be mutually determined, payable in 26 equal bi-weekly installments, less any amounts required to be withheld under applicable law. The Company may from time to time, but shall not be obligated to, grant you performance or other bonuses as additional compensation.

Reimbursement of Expenses and Benefits

In addition to salary, you will be entitled to reimbursement for all ordinary and reasonable out-of-pocket business expenses which are reasonably incurred by you in furtherance of the Company's business in accordance with reasonable policies from time to time adopted by the Company or as shall be approved in advance by the Company.

You will be entitled to ten (10) days of vacation leave for in each year at a time or times (either consecutively or not consecutively) mutually agreeable to the Company and you. If you do not use your vacation leave in any year, you will not be entitled to carry the unused days over from year to year. The Company will not pay you any additional compensation for any vacation time which is not used.

You will also be entitled to participate in any executive benefit plans which the Company provides or may establish for the benefit of its executives generally, but only if and to the extent provided in such executive benefit plans. Nothing contained herein shall obligate the Company to provide or maintain any such executive benefit plans.

Stock Award; Repurchase Option

In addition to compensation as provided above, at the time of the commencement of your employment hereunder during September 2001, you will be granted one hundred twenty (120) shares (the "Shares") of the Common Stock, $.01 par value, of the Company. The Shares will represent ten percent (10%) of the issued and outstanding shares of Common Stock of the Company as of that date. The Shares shall vest on the following schedule:

| Vesting Date | Total Vested Shares | Total Unvested Shares |
|---|---|---|
| Dec. 15, 2001 | 10 | 110 |
| Mar. 15, 2002 | 20 | 100 |
| June 15, 2002 | 30 | 90 |
| Sept.15, 2002 | 40 | 80 |
| Dec. 15, 2002 | 50 | 70 |
| Mar. 15, 2003 | 60 | 60 |
| June 15, 2003 | 70 | 50 |
| Sept.15, 2003 | 80 | 40 |
| Dec. 15, 2003 | 90 | 30 |
| Mar. 15, 2004 | 100 | 20 |
| June 15, 2004 | 110 | 10 |
| Sept.15, 2004 | 120 | 0 |

The Company will issue the Shares, in your name, in twelve (12) certificates, each in the amount of ten (10) shares. The Company will hold certificates for all unvested Shares, and release to you one such certificate in the amount of ten (10) shares on each Vesting Date as set forth above.

Repurchase Option

In the event that your employment with the Company shall terminate for any reason whatsoever prior to September 15, 2004, the Company shall have the option, exercisable by written notice to you within thirty (30) days of the date of such termination of employment, to repurchase all or any portion of the Shares as of the effective date of such termination of employment, at a purchase price equal to (i) $.01 per share for each unvested Share so repurchased; and (ii) the fair market value for each vested Share so repurchased. The "fair market value" of the Shares as of the date of such termination of employment shall be conclusively determined by the Board, acting in good faith and taking into account such factors as shall be relevant and reasonable, including, but not limited to, the annual revenue, annual operating income and operating cash flow of the Company. In making such determination, the Board may, but shall not be obligated to, consult with independent professional evaluators.

If the Company elects to repurchase any or all of the Shares pursuant to the foregoing provisions, the Company shall furnish you with written notice thereof within thirty (30) days of the termination of your employment, which notice will specify the Shares that the Company is electing to purchase, the fair market value of any vested Shares that the Company is electing to repurchase, and the date on which the Company and you will effect such repurchase (the "Closing"), which date shall not be more than ninety (90) days after the date of termination of your employment. At the Closing, you agree to deliver any certificates for the Shares which the Company has elected to repurchase, duly endorsed to the Company, and to execute and deliver stock powers or other appropriate instruments of transfer with respect to such Shares, and the Company agrees contemporaneously to deliver you a check in the amount of the purchase price for such Shares and to deliver to you certificates for any Shares as to which the Company has not duly exercised its repurchase option hereunder. The Closing shall take place at the Company's offices, or at such other place as shall be mutually agreed between you and the Company. By your acceptance hereof, you agree and hereby appoint the Company and its Secretary or Assistant Secretary as your true and lawful attorney-in-fact, with full power to endorse any stock powers or stock certificates in your name for the purposes hereof, and to transfer any and all certificates, for and in your name, on the books of the Company and in the Company's stock ledger, with respect to any Shares as to which the Company has duly and properly exercised its option to repurchase as set forth above.

If the Company does not elect to repurchase all of the Shares in accordance with the preceding paragraph, you shall, after the thirty (30) day notice period commencing with the date of termination of your employment, hold any and all Shares which the Company has not elected to repurchase free and clear of the repurchase option set forth in this Section, but subject nevertheless to the restrictions on transfer and right of first refusal set forth in the following Section.

Restrictions on Transfer; Right of First Refusal

You understand and agree that you shall have no right to sell, transfer, assign or pledge any of the unvested Shares without the prior written consent of the Company, which the Company may grant or withhold in its sole discretion. You further understand and agree that you shall have no right to sell, transfer, assign or pledge any of the vested Shares, except in accordance with this Section. If at any time while you own any vested Shares you receive from any other person a bona fide written offer to purchase any of the vested Shares, which offer you desire to accept, you shall first notify the Company in writing of your desire to accept such offer and you shall furnish to the Company a copy of such written offer. The Company shall have thirty (30) days from the date of receipt by the Company of such written notice (the "Option Period") within which to notify you in writing you of its election as to whether the Company desires to purchase all, but not less than all, of the Shares subject to the written offer, at the price set forth in the third party offer, which notice shall specify a date for the closing of the transaction, which date shall not be more than ninety (90) days after receipt by the Company of your notice of desire to sell some or all of your vested Shares (the "RFR Closing"). Failure by the Company to make such election to purchase the Shares subject to the written offer within such thirty (30) day period shall be deemed to be an election by the Company not to so purchase said Shares.

If the Company elects to purchase all of the Shares subject to such third party written offer at the price set forth therein, at the RFR Closing you agree to deliver any certificates for the subject Shares, duly endorsed to the Company, and to execute and deliver stock powers or other appropriate instruments of transfer with respect to such Shares, and the Company agrees contemporaneously to deliver you a check in the amount of the purchase price for such Shares. If the Company does not elect to purchase all of the Shares subject to such third party written offer, you may sell the subject Shares, provided that the (i) the sale is made only to the offeror identified in your notice, (ii) the sale shall be for a price not less than the noticed offering price, and (iii) the sale shall be consummated within sixty (60) days after the expiration of the Option Period.

Stock Certificates; Legends

You understand and acknowledge that the Shares have not been registered under the Securities Act of 1933 (the "Act") and you hereby warrant to the Company that you are acquiring the Shares for investment and not with a view to the sale or resale of the Shares in connection with any purchase or acquisition of the Shares by you. In connection therewith, you agree to be bound by the provisions of the legends in substantially the following form which shall be endorsed upon the certificate(s) evidencing the Shares:

"The shares represented by this certificate have been taken for investment and they may not be sold, pledged or otherwise transferred by any person in the absence of an effective registration statement for the shares under the Securities Act of 1933 or an opinion of counsel satisfactory to the Company that an exemption from registration is then available.

"The shares represented by this certificate are subject to restrictions on transfer, rights in favor of the Company and other terms and conditions set forth in a certain letter agreement dated August 1, 2001 by and between Albert L. Lash IV and the Company. The Company will furnish copies of said letter agreement without charge to the holder of this certificate upon written request for the same.

Section 83(b) Election

The Company and you agree that within thirty (30) days of your acquisition of the Shares, you will file with the appropriate office of the Internal Revenue Service a written election with respect thereto pursuant to Section 83(b) of the Internal Revenue Code of 1986, as amended. In said election you agree to report your acquisition of the Shares as being subject to (i) restrictions which, by their terms, may or will never lapse (the Repurchase Option in the event of the termination of your employment, the Restrictions on Transfer and the Right of First Refusal set forth above) and (ii) restrictions which will lapse (the vesting of Shares as set forth above). Neither party will take any voluntary action with respect to the tax reporting of the transfer of the Shares to you hereunder which is inconsistent with any of the foregoing.

Prohibited Competition

You recognize and acknowledge the competitive and proprietary nature and aspects of the business of the Company. You further acknowledge and agree that a business will be deemed competitive with the Company if it performs services in the nature of programming, designing, configuring or implementing software with substantially the same functionality as the software used or sold by the Company, or if it programs, manufactures or sells any of the specific products provided or offered by the Company or if it performs any other services and/or engages in the production, manufacture, distribution or sale of any product similar to services performed or products produced, manufactured, distributed or sold by the Company during the term of your relationship with the Company (such business to be referred to as a "competitive business").

You further acknowledge and agree that during the course of your employment with the Company, the Company will furnish, disclose or make available to you, or you will have access to, confidential and proprietary information related to the Company's business. You also acknowledge that such confidential information has been developed and will be developed by the Company through the expenditure by the Company of substantial time, effort and money and that all such confidential information could be used by you to compete with the Company.

Accordingly, you hereby covenant and agree, in consideration of the Company's agreement to employ you and in view of the confidential position to be held by you and the confidential nature and proprietary value of the information which the Company may share with you, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, that during the entire period during which you perform services for the Company and for a period of two (2) years following the termination of your employment, whether such termination is voluntary or involuntary, the you shall not, without the prior written consent of the Company:

(a) For yourself or on behalf of any other, directly or indirectly, either as principal, agent, stockholder, employee, consultant, representative or in any other capacity, own, manage, operate or control, or be concerned, connected or employed by, or otherwise associate in any manner with, engage in or have a financial interest in any business which is directly or indirectly competitive with the business of the Company within the United States of America; or

(b)     Either individually or on behalf of or through any third party, solicit, divert or appropriate or attempt to solicit, divert or appropriate, for the purpose of competing with the Company, any customers, clients or patrons of the Company, or any prospective customers, clients or patrons with respect to which the Company has developed or made a sales presentation (or similar offering of services); or

(c)     Either individually or on behalf of or through any third party, directly or indirectly, solicit, entice or persuade or attempt to solicit, entice or persuade any other employees of or consultants to the Company to leave the services of the Company for any reason.

You further recognize and acknowledge that (i) the types of employment which are prohibited by this agreement are narrow and reasonable in relation to the skills which represent your principal salable asset both to the Company and to other prospective employers, and (ii) the geographical scope of the provisions of this Section is reasonable, legitimate and fair to you in light of the Company's need to market its services and sell its products in that specific geographic area in order to have a sufficient customer base to make the Company's business profitable and in light of the limited restrictions on the type of employment prohibited herein compared to the types of employment for which you are qualified to earn your livelihood.

If any part of this section of this letter agreement should be determined by a court of competent jurisdiction to be unreasonable in duration, geographic area, or scope, then this section is intended to and shall extend only for such period of time, in such area and with respect to such activity as is determined to be reasonable.

Confidential Information

You recognize and acknowledge that you are and will be in possession of confidential and proprietary information concerning the administrative, management, financial, technical and marketing activities of the Company, including, but not limited to, software, technical data, algorithms, formulae, specialized programs and code, customer lists, procedures, processes, plans, strategies, cost and financial data and other trade secrets of a proprietary nature, including research, development and knowledge regarding the Company's services and products (collectively the "Confidential Information"). It is recognized that the Confidential Information, as it may exist from time to time, is a valuable, special, proprietary and unique asset of the Company's business. Accordingly, you shall not disclose, both during and after the term of your employment with the

Company, any Confidential Information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever or make any use thereof, except for use in connection with the performance of your duties and responsibilities hereunder or except as the Company may otherwise permit in writing.

### Ownership of Ideas, Copyrights and Patents

You agree that all ideas, discoveries, creations, manuscripts and properties, innovations, improvements, know-how, inventions, designs, developments, apparatus, techniques, methods, and formulae (all of the foregoing being hereinafter referred to as "proprietary information") which may be used in the business of the Company, whether patentable, copyrightable or not, which you may conceive or develop during the term of employment with the Company or in the performance of any services for the Company, alone or in conjunction with others, whether during or out of regular business hours, and whether at the request or upon the suggestion of the Company, or otherwise, shall be the sole and exclusive property of the Company, and that you will not publish or divulge any of the proprietary information without the prior written consent of the Company. In addition, you hereby assign to the Company all of your right, title and interest in and to all of the foregoing. At any time during or after the term of your engagement hereunder, you agree to fully cooperate with the Company, its attorneys and agents, in the preparation and filing of all papers and other documents as may be required to perfect the Company's rights in and to any of such proprietary information, including, but not limited to, joining in any proceeding to obtain copyrights, trademarks or other legal rights of the United States and of any and all other countries, provided that the Company will bear the expense of such proceedings.

### Injunctive Relief

You hereby expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in the sections of this letter entitled "Prohibited Competition", "Confidential Information" or "Ownership of Ideas, Copyrights and Patents" will result in substantial, continuing and irreparable injury to the Company. Accordingly, you hereby agree that, in addition to any other remedy that may be available to the Company, the Company shall be entitled to injunctive or other equitable relief by a court of appropriate jurisdiction in the event of any breach of threatened breach of the terms of those sections.

Company Property

Upon termination of your employment with the Company for any reason, you agree to deliver to the Company any property of the Company which may be in your possession, including any computers, laptops, cell phones, programs, products, materials, memoranda, notes, records, reports, or other documents or photocopies of the same.

Notices

Any notice or other communication required or permitted hereunder shall be deemed sufficiently given if hand delivered, faxed or sent by registered or certified mail, postage and fees prepaid, addressed to the party to be notified. Notices shall be given or sent at or to the Company's principal business address or, in the case of notices to you which are not hand delivered, sent to you at the last known address for you on the Company's records.

The provisions of this letter agreement shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

If the foregoing accurately sets forth our understanding with respect to the terms of your employment, kindly acknowledge your agreement by countersigning the duplicate of this letter in the place indicated.

I am delighted that you will be joining us and look forward to a productive and prosperous relationship.

Very truly yours,

Arthur Randolph Greene, Jr.
President

ACKNOWLEDGED AND AGREED TO:

Albert L. Lash IV