UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALBERT L. LASH, IV,

             Plaintiff,

v.

RBM TECHNOLOGIES, INC.,

             Defendant.

CIVIL ACTION NO. 04CV10063 GAO

## MEMORANDUM OF REASONS IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION FOR PROTECTIVE ORDER

### INTRODUCTION

The defendant, RBM Technologies, Inc. ("RBM"), submits the following Memorandum of Reasons in Support of Defendant's Emergency Motion for Protective Order (the "Motion"). The Motion requests this Honorable Court to order, pursuant to Fed. R. Civ. P. Rule 26 (c) that documents sought in the subpoenas issued on March 8, 2006 signed by the plaintiff David W. Fanikos, served by fax on the afternoon of Friday, March 10, 2006 and requiring production and the permission to inspect and copy documents in the possession of by Verizon Wireless, Harris Bank, Cingular Wireless, the Provident Bank, Ann Taylor Stores Corporation, The Body Shop, Bank of New York, Astoria Federal, Circuit City, Sovereign Bank, Independent Bank Corp./The Rockland Trust, American Savings Bank, Wachovia Bank, National City and City National Bank (the "Subpoenas") not be produced. The Subpoenas were issued despite the fact that the defendant has not provided to the plaintiff the Automatic Required Disclosure required in Fed. R. Civ. P. 26 (a) (1) and therefore may not initiate discovery under LR 26.2.

Further, the discovery sought in the Subpoenas will result in annoyance, embarrassment,

oppression and undue burden or expense on RBM. Fed R. Civ. P. Rule 26(c). The

Subpoenas call for a disclosure of RBM's trade secrets and confidential commercial

information, which will give Lash a competitive advantage against RBM. The

Subpoenas are clearly intended to harass RBM and cause it embarrassment with its

customers or potential customers and damage RBM's relationships with the same.

Finally, the discovery sought in this case is unlikely to be necessary as the issues it

address will likely be resolved in the separate pending case of RBM Technologies, Inc. v.

Albert L. Lash IV and Savonix Corporation; Massachusetts Middlesex County Superior

Court Civil Action No. 04-0047 (the "State Case").

## FACTS

On January 6, 2004, RBM filed a Verified Complaint against Lash, initiating the

State Case. On November 10, 2004, RBM filed an Amended Complaint against Lash and

Savonix Corporation (the "Amended Complaint"). On January 9, 2004, Lash removed

the State Case to the United States District Court for the District of Massachusetts. On

January 9, 2004, Lash filed the instant case alleging causes of action for copyright

infringement, declaratory judgment that Lash is the owner of the copyright in the

software and accounting. On August 13, 2004, this Court (O'Toole, J.) remanded the

State Case back to Middlesex County Superior Court, holding that the crux of the case

was "whether a valid contract existed between the parties and whether Lash breached that

contract" and that Lash's "right to claim ownership depends on an initial resolution of the

underlying contract issue." A copy of the Memorandum and Order remanding the State

Case (the "Remand Order") is attached hereto as Exhibit A. On November 26, 2004,

Lash filed his answer to the amended complaint (the "Answer") in the State Case, which included ten (10) counterclaims (the "Counterclaims"). The Counterclaims included counts VII (copyright infringement); VIII declaratory judgment that Lash is the owner of the copyright in the software and IX (accounting), which are identical to the three (3) causes of action in the instant case.

On or about December 23, 2003, approximately two (2) weeks after Lash terminated his employment with RBM, Lash used information obtained through his employment to shut down RBM's website. On January 6, 2004, in the State Case, RBM requested in the State Case a temporary restraining order and preliminary injunction ordering that Lash refrain from interfering with RBM's website. On January 7, 2004, the Middlesex County Superior Court (Chernoff, J.) issued a temporary restraining order, and on January 9, 2004, the Middlesex County Superior Court issued a preliminary injunction (Chernoff, J.). A copy of the preliminary injunction order is attached hereto as Exhibit B.

On or about August 1, 2001, the parties signed an Engagement Letter (the "Contract") setting out the employment relationship between RBM and Lash, which is at issue in the State Case. A copy of the Contract is attached hereto as Exhibit C. The Contract provided that Lash agreed not to compete with RBM for two (2) years following the termination of his employment. On February 3, 2004, less than two (2) months after terminating his employment with RBM, Lash organized Savonix Corporation ("Savonix") to compete with RBM in direct violation of his contractual obligations. Upon learning of this competition, in the State Case, RBM requested a temporary restraining order and preliminary injunction prohibiting Lash from competing with RBM. On November 12, 2004, the Middlesex County Superior Court (Bohn, J.) issued an order

prohibiting Lash from competing with RBM except for a specific trade show in

November, 2004 (the "Non-Compete Order"). A copy of the Non-Compete Order is

attached hereto as Exhibit D. RBM recently learned that Lash continues to compete with

RBM in violation of the Non-Compete Order.

      The parties have engaged in significant discovery in the State Case. Until March

1, 2006, there has been no discovery pursued in the instant case. The plaintiff has not

provided to the plaintiff the disclosures required by Fed. R. Civ. P. Rule 26 (a)(1).

      On March 8, 2006, David W. Fanikos, attorney for the plaintiff, signed the

Subpoenas. On March 10, 2006 the plaintiff notified the defendant that the plaintiff was

in the process of arranging for service of the Subpoenas. A copy of one of the

Subpoenas, a subpoena to Verizon Wireless, which is substantially identical to each of

the Subpoenas, is attached hereto as Exhibit E. Each of the Subpoenas commands the

Subpoenaed party to produce and permit inspection and copying of documents on March

20, 2006 at 10:00 a.m. All Subpoenas call for production at the place of business of the

individual subpoenaed parties, thereby scheduling fifteen (15) separate document

productions simultaneously at fifteen (15) separate locations in eleven (11) different

states ranging from Massachusetts to Hawaii.

## ARGUMENT

## I. THE DEFENDANT IS NOT ENTITLED TO INITIATE DISCOVERY BECAUSE HE HAS FAILED TO COMPLY WITH FED. R. CIV. P. RULE 26 (a) (1).

      Fed. R. Civ. P. Rule 26 (a) (1) provides that except in categories of proceedings

not relevant here or by Court order, "a party must, without awaiting a discovery request,

provide to other parties:

(A)    the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;

(B)    ˙ a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claim or defenses, unless solely for impeachment.

(C)    a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;

(D)    for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment."

Under LR 26.2 (A), "[u]nless otherwise ordered by … a judicial officer, before a party may initiate discovery, that party must provide to other parties disclosure of the information and materials called for by Fed. R. Civ. P. 26 (a) (1)." Therefore, a party before this Court may not initiate discovery without first providing the required disclosures under Federal Rule 26 (a) (1).

The defendant has failed to provide the plaintiffs with its initial disclosures required under Fed. R. Civ. P. Rule 26 (a) (1). Therefore, the defendant may not initiate any discovery of his own.

## II. A PROTECTIVE ORDER IS NECESSARY TO PROTECT RBM FROM ANNOYANCE, EMBARRASSMENT, OPPRESSION OR UNDUE BURDEN OR EXPENSE.

Rule 26 (c) of the Federal Rules of Civil Procedure provides that the Court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." This can include an order that

5

a particular disclosure or discovery not be had or an order that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed in a designated way." Fed. R. Civ. P. Rule 26 (c) (1) and (7). Further, the Court may limit discovery where the burden of discovery outweighs its likely benefit. Fed. R. Civ. P. Rule 26 (b)(2)(iii). In this case a protective order is necessary to protect RBM from annoyance, embarrassment, oppression and undue burden or expense.

The defendant has subpoenaed records from fifteen (15) companies that it claims are customers and prospective customers of RBM. The Subpoenas request documents relating to fifteen (15) categories as follows:

1.    All documents that refer or relate to sales presentations made by RBM Technologies, Inc. including all digital, PowerPoint or video demonstrations.

2.    All project specifications created by RBM Technologies, Inc.

3.    All pricing sheets provided by RBM Technologies, Inc.

4.    All meeting notes and correspondence provided by RBM Technologies, Inc. and/or prepared by you as a result of meetings, correspondence or communications with or about RBM Technologies, Inc. including, but not limited to, documents in electronic form.

5.    All draft and/or final deal memos, letters of understanding and contracts received from, submitted to and/or entered into with RBM Technologies, Inc.

6.    All invoices provided by RBM Technologies, Inc.

7.    All documents that refer or relate to payments made to RBM Technologies, Inc.

8.    All manuals provided by RBM Technologies, Inc. including, but not limited to, documents in electronic form.

9.    All screen shots that refer or relate to representative modules of the software offered by RBM Technologies, Inc.

10.    All router logs from corporate networks and/or virtual private networks evidencing access to RBM Technologies, Inc.'s servers.

11.    All licenses granted by RBM Technologies, Inc. from 2000 to the present to use any software received from RBM Technologies, Inc.

12.    All documents that refer or relate to any indemnity received from or provided to RBM Technologies, Inc. regarding the use of the software developed by Lash or any software derived therefrom or any software that is substantially similar to software developed by Lash or any software derived therefrom.

13.    All documents that refer or relate to ownership of the software developed by Lash or any software derived therefrom or any software that is substantially similar to software developed by Lash or any software derived therefrom.

14.    All documents that refer or relate to Albert L. Lash, IV or Savonix Corporation and/or the Lash Software.

15.    All documents that refer or relate to litigation between RBM Technologies, Inc. and Albert L. Lash, IV and/or Savonix Corporation.

These categories include a broad range of trade secrets and confidential commercial information, areas singled out for special protection in Fed. R. Civ. P. Rules 26 (c) (7) and Rule 45 (c) (3) (B) (i).  Production to Lash by any customer or any potential customer of the documents requested in the Subpoenas will be extremely prejudicial to RBM.  Such information will provide to Lash, who has formed a corporation to compete with RBM, with a comprehensive guide to RBM's marketing strategies, marketing materials, pricing information and other confidential commercial information regarding RBM's business.  Providing such information to Lash will put him at an unfair advantage with which to compete with RBM by giving him a comprehensive view of RBM's marketing strategy and pricing for its products.  RBM cannot trust that Lash will not wrongfully use the information received in light of his past behavior in

maliciously shutting down RBM's website after his termination and competing with RBM in violation of his contractual obligations.

Further, the Subpoenas' clear purpose is to harass the defendant and damage its standing with customers or potential customers. Understandably, clients or potential clients will be expected to look unfavorably towards RBM where they perceive their relationship with RBM to be the cause of a burdensome required document production. It is also foreseeable that the Subpoenas may be the cause of lost future business to RBM. This is precisely the calculated effect by the plaintiff. The plaintiff has scheduled fifteen (15) simultaneous document productions at fifteen (15) separate locations in eleven (11) states ranging from Massachusetts to Hawaii. It is not reasonable to expect that the plaintiff intends to appear at all fifteen (15) document productions. Therefore, it is clear that the primary purpose of the Subpoenas is the impact that it has on the business interests of the defendant. This Court should not permit such an abusive use of discovery tactics to impose a severe burden on the defendant.

### III.  THE DISCOVERY SOUGHT IS UNNECESSARY

The documents requested in the Subpoenas include virtually any document bearing on any relationship or communication between each subpoenaed company and RBM, regardless of whether any such documents relate to the software at issue in this case. However, even if the requests were narrowed to only request documents relating to the software in which Lash claims to hold a copyright, such information would be unnecessary, at least at this juncture in the case.

The parties are currently litigating in the State Case the issue, *inter alia,* of whether a valid contract existed in which Lash assigned all rights he may have owned in

the software to RBM. The State Case also involves Lash's counterclaims, including three (3) claims identical to the causes of action Lash has alleged in this case. The State Case was remanded by this Court because Lash's "right to claim ownership depends on an initial resolution of the underlying of the contract issue." Remand Order, p. 5.

The State Case is substantially underway. The parties have begun taking depositions and have scheduled substantially all of the remaining depositions in the next few weeks. The parties have exchanged document requests and responses. Interrogatories have been served and answered. It is anticipated that the State Case will be resolved substantially before the instant case.

A final judgment in favor of RBM in the State Case determining that the Contract determines that RBM owns the software at issue in this case will render unnecessary any action in this case, as would a judgment in favor of Lash. The parties would be barred by *res judicata* from relitigating the merits of the State Court actions, because there would be a final judgment on the merits of identical causes of action between identical parties. Breneman v. United States Ex Rel. The Federal Aviation Administration, 381 F. 3d 33 (2004).

In the likely event that action in this matter by this court is unnecessary, Lash would have no need in this case to intrude into the business relationships of RBM. Because the likelihood that such discovery will prove to be unnecessary, the burden of the proposed discovery on RBM outweighs its likely benefit. Fed. R. Civ. P. Rule 26 (b) (2).

9

## **CONCLUSION**

For the foregoing reasons, the defendant, RBM Technologies, Inc. requests that the Court issue a Protective Order that documents sought in the Subpoenas not be produced.

Respectfully submitted,

RBM TECHNOLOGIES, INC.

By its attorneys,

THE McLAUGHLIN BROTHERS, P.C.,


/s/ *George A. McLaughlin, III*
George A. McLaughlin, III
BBO #544822
The McLaughlin Brothers, P.C.,
One Beacon Street, 17th Floor
Boston, Massachusetts 02108
(617) 523-7165

Dated: March 16, 2006

.

## CERTIFICATE OF SERVICE

I, George A. McLaughlin, III, hereby certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ *George A. McLaughlin, III*
George A. McLaughlin, III


H:\RBM Technologies\PLEADINGS\Memorandum of Reasons of Defendant's Emergency Motion for Protective Order Federal Proceedings.doc

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

REC'D AUG 2 7 2004

CIVIL ACTION NO. 04-10062-GAO

RBM TECHNOLOGIES, INC.,
Plaintiff,

v.

ALBERT L. LASH, IV,
Defendant.

**MEMORANDUM & ORDER**
August 13, 2004

O'TOOLE, D.J.

The plaintiff, RBM Technologies, Inc. ("RBM"), brought suit against the defendant, Albert L. Lash, IV ("Lash"), in Middlesex Superior Court alleging, among other things, breach of contract based on an employment agreement signed by the parties. One paragraph of the agreement states that any work which Lash were to perform while under the agreement, whether copyrightable, patentable or not, would be the exclusive property of RBM. Lash claims that the contract is void because RBM failed to fulfill certain conditions precedent to its taking effect and, as a result, he, and not RBM, is the rightful owner of the copyright to a program entitled "Merchandising Manager" which is his work product. Lash removed the case based on his assertion that RBM's claim to ownership of the software program arises under the Copyright Amendments Act, 17 U.S.C. §§ 101 *et seq*, so that "federal question" jurisdiction exists. See 28 U.S.C. §§ 1331, 1338.

RBM has responded to Lash's notice of removal with a motion to remand. In support of its motion, RBM argues that its complaint contains no allegations creating federal jurisdiction over the matter. RBM states that the copyright-related claim is based on state contract law only and therefore





RBM's decision to have the state court hear its claims should be honored. Lash opposes the motion to remand arguing that RBM's complaint is "artfully pled" in order to avoid bringing the case within the jurisdiction of this Court.

Upon consideration of the parties' briefs and after oral argument, I conclude that the case ought to be remanded to the Middlesex Superior Court because it does not meet the requirements of 28 U.S.C. §§ 1331 or 1338.

A.    Summary of Facts

RBM is a developer of marketing and sales management solutions for retail banks and financial institutions. RBM sells a software program, "Merchandising Manager," to banks to help their various branches communicate with one another. RBM alleges that a prototype of "Merchandising Manager" was developed in the winter and spring of 2001. Lash allegedly began doing work for RBM on or about May 1, 2001. Lash claims that he was hired initially as an independent consultant and not as an employee of RBM. Lash claims that before he arrived at RBM, "Merchandising Manager" was merely in the mock-up stage of development and was incapable of functioning as a viable product.

Between May and June 2001, Lash contends that he wrote the source code for "Merchandising Manager" and in July a graphical demonstration of the program was completed. On or about August 1, 2001, Lash and RBM executed an engagement letter outlining the scope of Lash's employment with RBM.

Towards the latter half of 2003, Lash and RBM began to have disputes regarding the marketability of "Merchandising Manager." On December 2, 2003, Lash apparently filed for copyright registration of "Merchandising Manager," but as of the filing of this action

2

registration had not yet issued. On December 8, 2003, Lash terminated his relationship with RBM, and his attorney sent RBM a letter asserting that Lash was the rightful owner of the copyright to "Merchandising Manager" and demanding that RBM compensate Lash for any revenue generated by RBM's sale or use of the "Merchandising Manager" software.

RBM brought suit in Middlesex Superior Court against Lash for breach of contract, conversion, misappropriation of trade secrets and confidential information, declaratory judgment, and for violation of Mass. Gen. Laws ch. 272, § 99(Q) regarding wire communications. In addition, RBM sought and was granted by the Middlesex Superior Court, a Temporary Restraining Order and Preliminary Injunction enjoining Lash from interfering with the domain name to RBM's internet website.

Lash timely removed the action to this Court and asserted counterclaims against RBM for: (i) a declaratory judgment that the contract in question is void; (ii) breach of contract; (iii) violation of Mass. Gen. Laws ch. 272, § 99(Q) regarding wire communications; (iv) misappropriation of trade secrets and confidential information; (v) violation of the Electronic Communications Privacy Act; (vi) unfair competition; (vii) copyright infringement; (viii) declaratory judgment that Lash is the owner of the copyright in the disputed software; and (ix) an accounting. On the same day he filed his notice of removal, Lash filed a separate action in this Court against RBM alleging copyright infringement and seeking an accounting and a declaratory judgment that he is the owner of the copyright to "Merchandising Manager."

3

B.    Federal Jurisdiction

Civil actions are removable from state court to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441. United States district courts have original jurisdiction of civil actions "arising under" the laws of the United States, 28 U.S.C. § 1331, as well as of any civil action arising under any act of Congress relating to copyrights. 28 U.S.C. § 1338. Whether the claim arises under federal law is determined by reference to the complaint alone; the existence of a potential defense based on federal law does not confer a right to remove. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 399 (1987) ("[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.")

Moreover, the plaintiff is the master of his claim. Caterpillar, 482 U.S. at 392; see also The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon . . . .") (Holmes, J.). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, 482 U.S. at 392 (citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)).

On its face, RBM's complaint does not state a federal question. Although RBM's breach of contract claim is related to copyright law insofar as the contract RBM alleges Lash breached purportedly allocated ownership of a copyrighted program, this is not enough to satisfy the "arising under" requirement. The First Circuit considered a similar issue in Royal v. Leading Edge Prods., 833 F.2d 1, 2 (1st Cir. 1987), stating: "It is settled beyond peradventure that an action does not

4

'arise under' the federal copyright laws merely because it relates to a product that is the subject of a copyright." (citing Topolos v. Caldewey, 698 F.2d 991, 993 (9th Cir. 1983)).  Judge Friendly of the Second Circuit Court of Appeals also provided guidance which many courts have found useful:

> Mindful of the hazards of formulation in this treacherous area, we think that an action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act . . . or asserts a claim requiring construction of the Act . . . or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.  The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test.

T.B. Harms Co. v. Eliscu, 339 F.2d 823, 828 (2d Cir. 1964).

Here, the crux of RBM's claim is whether a valid contract existed between the parties and whether Lash breached that contract.  RBM asserts that because the contract is valid, Lash's work product is the exclusive property of RBM and he does not have the right to claim ownership of the copyright to "Merchandising Manager."  In opposition, Lash asserts that if he were properly exercising ownership rights over the software then there can be no breach of contract.  Lash's reasoning is circular because he ignores the fact that his right to claim ownership depends on an initial resolution of the underlying contract issue.

If, after resolving the essential contract issue, the state court finds it necessary to examine federal copyright law to resolve the dispute, it would certainly be within the court's purview to do so.  See Cambridge Literary Props. Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 64 n.4 (1st Cir. 2002); 3 M.Nimmer & D.Nimmer, Nimmer on Copyright § 12.01[A][2] (2004); see also Int'l Armor & Limousine Co. v. Moloney Coachbuilders Inc., 272 F.3d 912, 914 (7th Cir. 2001) (property rights created by federal statutes do not necessarily create claims under federal law when ownership created by such statutes becomes disputed).

C.    Preemption

The defendant also claims that federal copyright law preempts the plaintiff's claims of misappropriation of trade secrets and confidential information cause of action and this provides a basis for federal jurisdiction. Both parties cite Data Gen. Corp. v. Grumman Sys. Support Corp., 795 F. Supp 501, 507 (D. Mass. 1992), in which the court said, "Legislative history shows that Congress intended that state tort law of misappropriation of trade secrets not be preempted by federal copyright law as long as there is an extra element involving a breached duty to the plaintiff which renders the tort different in kind from copyright infringement."

RBM's claim satisfies this "extra element" requirement. Like the plaintiff in Data General, RBM alleges in its complaint that the defendant misappropriated trade secrets by reason of his breach of the confidentiality agreement contained in his contract with the plaintiff. "Since this claim is premised at least in part on the alleged wrongful acquisition or retention of trade secrets, the claim is not equivalent to, and thus not preempted by, federal copyright law." Id.

The defendant relies on Cuisinarts Corp. v. Appliance Sci. Corp., No. 5:91-CV 445 (WWE), 1991 U.S. Dist. LEXIS 21021 (D. Conn. Oct. 30, 1991), for his contention that the complaint requires construction of the Copyright Act with respect to issues of authorship and/or co-authorship, work-made-for-hire, derivative works and the "federally-granted rights to reproduce copyrighted work and to prepare derivative works therefrom." Def.'s Notice of Removal ¶ 3 (quoting Cuisinarts Corp, 1991 U.S. Dist. LEXIS 21021 at *2). The Cuisinarts decision is distinguishable. The court in Cuisinarts found that the plaintiff's complaint required an initial determination into whether the plaintiff was the owner, under federal copyright principles, of the disputed work. In the instant case, however, the plaintiff seeks to enforce the provisions of the contract wherein Lash purportedly

acknowledged that RBM owned the rights in and to the program at issue. Therefore, unlike in

Cuisinarts, the initial inquiry for the court is whether there was a valid contract that was breached.

D.      Conclusion

RBM's complaint neither arises under nor is preempted by federal law. There is no federal

jurisdiction over the case pursuant to either 28 U.S.C. §§ 1331 or 1338. RBM's motion to remand

is GRANTED. The case is to be returned to the Superior Court.


It is SO ORDERED.


_August 13, 2004_
DATE

_____
DISTRICT JUDGE


7

# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                SUPERIOR COURT
                                                              CIVIL ACTION NO. 04-0047

RBM Technologies, Inc.,      )
                             )
            Plaintiff,       )
                             )
v.                           )              **ORDER**
                             )
Albert L. Lash, IV,          )
                             )
            Defendant.       )

       After oral hearing upon Plaintiff's Motion for Temporary Restraining Order and

Preliminary Injunction, the Court hereby orders and directs as follows:

1.      The defendant, Albert L. Lash, IV and those persons actively concerting or participating

      with him ("Lash"), shall immediately refrain from interfering with the plaintiff's, RBM

      Technologies, Inc. (the "Company's"), use of its domain names, including but not limited

      to rbmtechnologies.com, and associated web site, www.rbmtechnologies.com, and access

      to the Company's e-mail connected with its domain name;

2.      Lash shall immediately refrain from interfering with RBM Systems, Inc.'s use of its

      domain names, including but not limited to rbmsystems.com, and associated web site,

      www.rbmsystems.com, and access to RBM's e-mail connected with its domain name;

3.      Lash shall immediately refrain from interfering with the Company's use of its domain

      names, including but not limited to rbmnetworks.com, and associated web site,

      www.rbmnetworks.com, and access to the Company's e-mail connected with its domain

      name;

4.   Lash shall immediately forward to the plaintiff any passwords related to rbmtechnologies.com and any e-mail messages received, and responses made thereto, by e-mail addresses associated with www.rbmtechnologies.com from December 23, 2003 to present;

5.   Lash shall immediately forward to the plaintiff any passwords related to rbmsystems.com and any e-mail messages received, and responses made thereto, by e-mail addresses associated with www.rbmsystems.com from December 23, 2003 to present;

6.   Lash shall immediately forward to the plaintiff any passwords related to rbmnetworks.com and any e-mail messages received, and responses made thereto, by e-mail addresses associated with www.rbmnetworks.com from December 23, 2003 to present; and

7.   Arthur R. Greene, Jr. ("Greene") is authorized and directed to take all steps necessary to regain control, with the assistance of Dotster, Inc., of the Company's domain names, e-mail addresses and website at dotster.com and to make whatever changes thereto that Greene deems is in the Company's best interests.

SO ORDERED:

By: _____

, J.

Associated Justice of the Superior Court

_2004 Jan. 9_
_This order will expire on April 9 2004 or until further_
_order of the Court_

# EXHIBIT C

# *RBM* Technologies

**RBM Technologies, Inc.**
25 Mount Auburn Street
Cambridge, Massachusetts 02138
617 576-1234

August 1, 2001

Mr. Albert L. Lash IV
21 Rockwood Road
Hingham, MA 02043

> Re: <u>Engagement Letter</u>

Dear Albert:

This letter will confirm the terms of your employment by RBM Technologies, Inc. (the "Company").

You will continue to be engaged as a consultant to the Company in your current capacity and under the current compensation arrangements until the commencement of your full-time employment, as described below.

At a mutually agreeable date during September 2001, you will commence full-time employment with the Company as its Vice President and Managing Director, Technology. In such capacity, you will be responsible for the development, coding and implementation of software for use by and licensing by the Company to its customers, and shall discharge such duties and responsibilities as are customary for the chief technology officer of a software technology company, together with such additional duties as the Board of Directors of the Company (the "Board") may assign, consistent with such office. You shall report to the President of the Company, and shall devote your full business time and best efforts in the faithful performance of your duties and to the promotion of the business objectives of the Company.

<u>Term of Employment</u>.

Your employment will continue until the first to occur of the following:

1

(a)    your death or physical or mental incapacity;

(b)    Immediate termination by the Company upon written notice for "Cause", which shall include (i) illegal, dishonest or negligent conduct which constitutes a breach of your covenants and obligations under this letter agreement or under any applicable legal principle, or which involves funds or other assets of the Company, (ii) any conduct which is likely to have a material adverse effect upon the goodwill or business position of the Company, or (iii) your failure to carry out your duties to the Company hereunder.

(c)    Termination by either party, for any reason, upon not less than thirty (30) days' notice to the other.

## Compensation

Prior to commencement of your full-time employment as Vice President and Managing Director, Technology, you will be compensated under the current hourly arrangement. Commencing with your full-time employment, the Company will pay you an annual salary in an amount to be mutually determined, payable in 26 equal bi-weekly installments, less any amounts required to be withheld under applicable law. The Company may from time to time, but shall not be obligated to, grant you performance or other bonuses as additional compensation.

## Reimbursement of Expenses and Benefits

In addition to salary, you will be entitled to reimbursement for all ordinary and reasonable out-of-pocket business expenses which are reasonably incurred by you in furtherance of the Company's business in accordance with reasonable policies from time to time adopted by the Company or as shall be approved in advance by the Company.

You will be entitled to ten (10) days of vacation leave for in each year at a time or times (either consecutively or not consecutively) mutually agreeable to the Company and you. If you do not use your vacation leave in any year, you will not be entitled to carry the unused days over from year to year. The Company will not pay you any additional compensation for any vacation time which is not used.

2

You will also be entitled to participate in any executive benefit plans which the Company provides or may establish for the benefit of its executives generally, but only if and to the extent provided in such executive benefit plans. Nothing contained herein shall obligate the Company to provide or maintain any such executive benefit plans.

Stock Award; Repurchase Option

In addition to compensation as provided above, at the time of the commencement of your employment hereunder during September 2001, you will be granted one hundred twenty (120) shares (the "Shares") of the Common Stock, $.01 par value, of the Company. The Shares will represent ten percent (10%) of the issued and outstanding shares of Common Stock of the Company as of that date. The Shares shall vest on the following schedule:

| Vesting Date | Total Vested Shares | Total Unvested Shares |
|---|---|---|
| Dec. 15, 2001 | 10 | 110 |
| Mar. 15, 2002 | 20 | 100 |
| June 15, 2002 | 30 | 90 |
| Sept.15, 2002 | 40 | 80 |
| Dec. 15, 2002 | 50 | 70 |
| Mar. 15, 2003 | 60 | 60 |
| June 15, 2003 | 70 | 50 |
| Sept.15, 2003 | 80 | 40 |
| Dec. 15, 2003 | 90 | 30 |
| Mar. 15, 2004 | 100 | 20 |
| June 15, 2004 | 110 | 10 |
| Sept.15, 2004 | 120 | 0 |

The Company will issue the Shares, in your name, in twelve (12) certificates, each in the amount of ten (10) shares. The Company will hold certificates for all unvested Shares, and release to you one such certificate in the amount of ten (10) shares on each Vesting Date as set forth above.

<u>Repurchase Option</u>

In the event that your employment with the Company shall terminate for any reason whatsoever prior to September 15, 2004, the Company shall have the option, exercisable by written notice to you within thirty (30) days of the date of such termination of employment, to repurchase all or any portion of the Shares as of the effective date of such termination of employment, at a purchase price equal to (i) $.01 per share for each unvested Share so repurchased; and (ii) the fair market value for each vested Share so repurchased. The "fair market value" of the Shares as of the date of such termination of employment shall be conclusively determined by the Board, acting in good faith and taking into account such factors as shall be relevant and reasonable, including, but not limited to, the annual revenue, annual operating income and operating cash flow of the Company. In making such determination, the Board may, but shall not be obligated to, consult with independent professional evaluators.

If the Company elects to repurchase any or all of the Shares pursuant to the foregoing provisions, the Company shall furnish you with written notice thereof within thirty (30) days of the termination of your employment, which notice will specify the Shares that the Company is electing to purchase, the fair market value of any vested Shares that the Company is electing to repurchase, and the date on which the Company and you will effect such repurchase (the "Closing"), which date shall not be more than ninety (90) days after the date of termination of your employment. At the Closing, you agree to deliver any certificates for the Shares which the Company has elected to repurchase, duly endorsed to the Company, and to execute and deliver stock powers or other appropriate instruments of transfer with respect to such Shares, and the Company agrees contemporaneously to deliver you a check in the amount of the purchase price for such Shares and to deliver to you certificates for any Shares as to which the Company has not duly exercised its repurchase option hereunder. The Closing shall take place at the Company's offices, or at such other place as shall be mutually agreed between you and the Company. By your acceptance hereof, you agree and hereby appoint the Company and its Secretary or Assistant Secretary as your true and lawful attorney-in-fact, with full power to endorse any stock powers or stock certificates in your name for the purposes hereof, and to transfer any and all certificates, for and in your name, on the books of the Company and in the Company's stock ledger, with respect to any Shares as to which the Company has duly and properly exercised its option to repurchase as set forth above.

If the Company does not elect to repurchase all of the Shares in accordance with the preceding paragraph, you shall, after the thirty (30) day notice period commencing with the date of termination of your employment, hold any and all Shares which the Company has not elected to repurchase free and clear of the repurchase option set forth in this Section, but subject nevertheless to the restrictions on transfer and right of first refusal set forth in the following Section.

<u>Restrictions on Transfer; Right of First Refusal</u>

You understand and agree that you shall have no right to sell, transfer, assign or pledge any of the unvested Shares without the prior written consent of the Company, which the Company may grant or withhold in its sole discretion. You further understand and agree that you shall have no right to sell, transfer, assign or pledge any of the vested Shares, except in accordance with this Section. If at any time while you own any vested Shares you receive from any other person a bona fide written offer to purchase any of the vested Shares, which offer you desire to accept, you shall first notify the Company in writing of your desire to accept such offer and you shall furnish to the Company a copy of such written offer. The Company shall have thirty (30) days from the date of receipt by the Company of such written notice (the "Option Period") within which to notify you in writing of its election as to whether the Company desires to purchase all, but not less than all, of the Shares subject to the written offer, at the price set forth in the third party offer, which notice shall specify a date for the closing of the transaction, which date shall not be more than ninety (90) days after receipt by the Company of your notice of desire to sell some or all of your vested Shares (the "RFR Closing"). Failure by the Company to make such election to purchase the Shares subject to the written offer within such thirty (30) day period shall be deemed to be an election by the Company not to so purchase said Shares.

If the Company elects to purchase all of the Shares subject to such third party written offer at the price set forth therein, at the RFR Closing you agree to deliver any certificates for the subject Shares, duly endorsed to the Company, and to execute and deliver stock powers or other appropriate instruments of transfer with respect to such Shares, and the Company agrees contemporaneously to deliver you a check in the amount of the purchase price for such Shares. If the Company does not elect to purchase all of the Shares subject to such third party written offer, you may sell the subject Shares, provided that the (i) the sale is made only to the offeror identified in your notice, (ii) the sale shall be for a price not less than the noticed offering price, and (iii) the sale shall be consummated within sixty (60) days after the expiration of the Option Period.

Stock Certificates: Legends

You understand and acknowledge that the Shares have not been registered under the Securities Act of 1933 (the "Act") and you hereby warrant to the Company that you are acquiring the Shares for investment and not with a view to the sale or resale of the Shares in connection with any purchase or acquisition of the Shares by you. In connection therewith, you agree to be bound by the provisions of the legends in substantially the following form which shall be endorsed upon the certificate(s) evidencing the Shares:

"The shares represented by this certificate have been taken for investment and they may not be sold, pledged or otherwise transferred by any person in the absence of an effective registration statement for the shares under the Securities Act of 1933 or an opinion of counsel satisfactory to the Company that an exemption from registration is then available.

"The shares represented by this certificate are subject to restrictions on transfer, rights in favor of the Company and other terms and conditions set forth in a certain letter agreement dated August 1, 2001 by and between Albert L. Lash IV and the Company. The Company will furnish copies of said letter agreement without charge to the holder of this certificate upon written request for the same.

Section 83(b) Election

The Company and you agree that within thirty (30) days of your acquisition of the Shares, you will file with the appropriate office of the Internal Revenue Service a written election with respect thereto pursuant to Section 83(b) of the Internal Revenue Code of 1986, as amended. In said election you agree to report your acquisition of the Shares as being subject to (i) restrictions which, by their terms, may or will never lapse (the Repurchase Option in the event of the termination of your employment, the Restrictions on Transfer and the Right of First Refusal set forth above) and (ii) restrictions which will lapse (the vesting of Shares as set forth above). Neither party will take any voluntary action with respect to the tax reporting of the transfer of the Shares to you hereunder which is inconsistent with any of the foregoing.

Prohibited Competition

You recognize and acknowledge the competitive and proprietary nature and aspects of the business of the Company. You further acknowledge and agree that a business will be deemed competitive with the Company if it performs services in the nature of programming, designing, configuring or implementing software with substantially the same functionality as the software used or sold by the Company, or if it programs, manufactures or sells any of the specific products provided or offered by the Company or if it performs any other services and/or engages in the production, manufacture, distribution or sale of any product similar to services performed or products produced, manufactured, distributed or sold by the Company during the term of your relationship with the Company (such business to be referred to as a "competitive business").

You further acknowledge and agree that during the course of your employment with the Company, the Company will furnish, disclose or make available to you, or you will have access to, confidential and proprietary information related to the Company's business. You also acknowledge that such confidential information has been developed and will be developed by the Company through the expenditure by the Company of substantial time, effort and money and that all such confidential information could be used by you to compete with the Company.

Accordingly, you hereby covenant and agree, in consideration of the Company's agreement to employ you and in view of the confidential position to be held by you and the confidential nature and proprietary value of the information which the Company may share with you, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, that during the entire period during which you perform services for the Company and for a period of two (2) years following the termination of your employment, whether such termination is voluntary or involuntary, the you shall not, without the prior written consent of the Company:

      (a)    For yourself or on behalf of any other, directly or indirectly, either as principal, agent, stockholder, employee, consultant, representative or in any other capacity, own, manage, operate or control, or be concerned, connected or employed by, or otherwise associate in any manner with, engage in or have a financial interest in any business which is directly or indirectly competitive with the business of the Company within the United States of America; or

(b)    Either individually or on behalf of or through any third party, solicit, divert or appropriate or attempt to solicit, divert or appropriate, for the purpose of competing with the Company, any customers, clients or patrons of the Company, or any prospective customers, clients or patrons with respect to which the Company has developed or made a sales presentation (or similar offering of services); or

(c)    Either individually or on behalf of or through any third party, directly or indirectly, solicit, entice or persuade or attempt to solicit, entice or persuade any other employees of or consultants to the Company to leave the services of the Company for any reason.

You further recognize and acknowledge that (i) the types of employment which are prohibited by this agreement are narrow and reasonable in relation to the skills which represent your principal salable asset both to the Company and to other prospective employers, and (ii) the geographical scope of the provisions of this Section is reasonable, legitimate and fair to you in light of the Company's need to market its services and sell its products in that specific geographic area in order to have a sufficient customer base to make the Company's business profitable and in light of the limited restrictions on the type of employment prohibited herein compared to the types of employment for which you are qualified to earn your livelihood.

If any part of this section of this letter agreement should be determined by a court of competent jurisdiction to be unreasonable in duration, geographic area, or scope, then this section is intended to and shall extend only for such period of time, in such area and with respect to such activity as is determined to be reasonable.

Confidential Information

You recognize and acknowledge that you are and will be in possession of confidential and proprietary information concerning the administrative, management, financial, technical and marketing activities of the Company, including, but not limited to, software, technical data, algorithms, formulae, specialized programs and code, customer lists, procedures, processes, plans, strategies, cost and financial data and other trade secrets of a proprietary nature, including research, development and knowledge regarding the Company's services and products (collectively the "Confidential Information"). It is recognized that the Confidential Information, as it may exist from time to time, is a valuable, special, proprietary and unique asset of the Company's business. Accordingly, you shall not disclose, both during and after the term of your employment with the

Company, any Confidential Information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever or make any use thereof, except for use in connection with the performance of your duties and responsibilities hereunder or except as the Company may otherwise permit in writing.

### Ownership of Ideas, Copyrights and Patents

You agree that all ideas, discoveries, creations, manuscripts and properties, innovations, improvements, know-how, inventions, designs, developments, apparatus, techniques, methods, and formulae (all of the foregoing being hereinafter referred to as "proprietary information") which may be used in the business of the Company, whether patentable, copyrightable or not, which you may conceive or develop during the term of employment with the Company or in the performance of any services for the Company, alone or in conjunction with others, whether during or out of regular business hours, and whether at the request or upon the suggestion of the Company, or otherwise, shall be the sole and exclusive property of the Company, and that you will not publish or divulge any of the proprietary information without the prior written consent of the Company. In addition, you hereby assign to the Company all of your right, title and interest in and to all of the foregoing. At any time during or after the term of your engagement hereunder, you agree to fully cooperate with the Company, its attorneys and agents, in the preparation and filing of all papers and other documents as may be required to perfect the Company's rights in and to any of such proprietary information, including, but not limited to, joining in any proceeding to obtain copyrights, trademarks or other legal rights of the United States and of any and all other countries, provided that the Company will bear the expense of such proceedings.

### Injunctive Relief

You hereby expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in the sections of this letter entitled "Prohibited Competition", "Confidential Information" or "Ownership of Ideas, Copyrights and Patents" will result in substantial, continuing and irreparable injury to the Company. Accordingly, you hereby agree that, in addition to any other remedy that may be available to the Company, the Company shall be entitled to injunctive or other equitable relief by a court of appropriate jurisdiction in the event of any breach of threatened breach of the terms of those sections.

## Company Property

Upon termination of your employment with the Company for any reason, you agree to deliver to the Company any property of the Company which may be in your possession, including any computers, laptops, cell phones, programs, products, materials, memoranda, notes, records, reports, or other documents or photocopies of the same.

## Notices

Any notice or other communication required or permitted hereunder shall be deemed sufficiently given if hand delivered, faxed or sent by registered or certified mail, postage and fees prepaid, addressed to the party to be notified. Notices shall be given or sent at or to the Company's principal business address or, in the case of notices to you which are not hand delivered, sent to you at the last known address for you on the Company's records.

The provisions of this letter agreement shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

If the foregoing accurately sets forth our understanding with respect to the terms of your employment, kindly acknowledge your agreement by countersigning the duplicate of this letter in the place indicated.

I am delighted that you will be joining us and look forward to a productive and prosperous relationship.

Very truly yours,

Arthur Randolph Greene, Jr.
President

ACKNOWLEDGED AND AGREED TO:

Albert L. Lash IV

-10-

# EXHIBIT D

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

**SUPERIOR COURT**
**CIVIL ACTION NO. 04-0047**

### RBM TECHNOLOGIES, INC.,
**Plaintiff**

#### vs.

### ALBERT L. LASH, IV and SAVONIX CORPORATION,
**Defendants**

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### INTRODUCTION

On November 10, 2004, this civil case was before the undersigned justice for hearing on the request of the plaintiff, RBM Technologies, Inc. ("RBM"), for a temporary restraining order and preliminary injunction seeking to enjoin the defendants, Albert L. Lash, IV and Savonix Corporation (hereinafter collectively referred to as "Lash" or the "defendant"), from directly or indirectly competing with RBM.

After hearing oral arguments and reviewing the memoranda submitted by both parties, it is clear that the decisive issue in this case is whether Lash wrote the source code for Merchandising Manager (the "Software") before or after he signed an engagement letter alleged by the plaintiff to be the employment contract which defines the relationship of the parties. That issue cannot be resolved without a trial.

1

The inconsistencies and inaccuracies stated by both parties and the extremely short time frame in which the court was asked to issue this order make it difficult for the court to evaluate this motion based on the traditional injunctive relief analysis, i.e. likelihood of success, balancing of harms, and adequate remedy at law.[1]  The court, however, recognizes the urgency of the situation and with some reluctance will issue an order on the plaintiff's motion for temporary relief.  In doing so, the court will focus solely on the element of comparable harms.

## BACKGROUND

RBM develops marketing and sales management solutions for retail banks and financial institutions.  RBM sells a software program, "Merchandise Manager," (the "Software") to banks.  The Software facilitates communication between a bank's headquarters and its branches.  The Software was conceived by Arthur Greene ("Greene"), the majority shareholder, President and Treasurer of RBM, in the winter and spring of 2001.

Lash allegedly began working with Greene on or about May 1, 2001.  Lash asserts that he worked initially as an independent consultant rather than an employee, and that between May and June 2001, while acting as an independent consultant, he wrote the source code for the Software.  On or about August or September of 2001, after working as a consultant for four months or so, Lash and RBM executed an engagement letter outlining the scope of Lash's employment with RBM.  It is this engagement letter which contains the non-competition and proprietary interest provisions at issue here.  At some

---

[1] Upon reviewing both parties' lengthy briefs, it appears that both the plaintiff and the defendant are more interested in discussing the incidental harms, rather than addressing the real issues, such as when did Lash create the source code.  Neither the memoranda nor the oral arguments were informative on this issue.

2

point in time after signing the engagement letter, Lash acted as RBM's Vice President
and Managing Director of Technology.

On December 8, 2003, Lash terminated his relationship with RBM, claimed that
he was the rightful owner of the Software,[2] and demanded that RBM compensate him for
any revenue generated by RBM's sale or use of the Software. On February 3, 2004, Lash
incorporated Savonix Corporation ("Savonix") as a Massachusetts domestic profit
corporation. Lash is the President, Treasurer, Secretary, Assistant Clerk, Vice President,
Assistant Secretary and Director of Savonix. Savonix markets internet-based systems to
enable retail businesses to manage marketing campaigns throughout their retail locations.

## DISCUSSION

### A.    THE PRAYER FOR A TEMPORARY RESTRAINING ORDER

The purpose of a temporary restraining order is to maintain the status quo when
the applicant is about to suffer immediate and irreparable harm. Mass. R. Civ. P. Rule 65
(a) requires a party seeking a temporary restraining order to "(show) clearly...from
specific facts shown by affidavit or by the verified complaint that immediate and
irreparable injury, loss or damage will result to the applicant" if the temporary restraining
order is not granted. The question of who may prevail on the merits is not yet in play.

The plaintiff contends that to permit Lash to possess confidential and proprietary
information regarding the development and marketing of the client's software to compete
to with RBM would irreparably damage RBM's goodwill and reputation as the only

---

[2] On December 2, 2003, while still employed by RBM, Lash attempted to register the Software for
Copyright protection. This is one example of the many inconsistencies in this case. If Lash, as he
contends, created the Software before commencing employment at RBM, then two important questions
arise: (1) why did Lash wait to apply for a copyright until December 2003, and (2) why did Lash allow
RBM to use the Software without consideration or any written agreement, such as a licensing agreement?

3

company that possesses the relevant technology. The defendant, however, contends that seventeen other companies provide an internet based system that enables banks and other businesses to manage their marketing campaigns and real estate by being able to send and access a wide variety of marketing and real estate information via the internet.

RBM has been incorporated since January of 2000 and established a significant client base.[3] Savonix, however, was incorporated in February of 2004. If this court were to impose the restraint requested by the plaintiffs, the defendants would be prohibited from marketing their company, its products and services at an upcoming trade show in Las Vegas, Nevada. Such trade shows may be very lucrative, particularly for start-up companies such as Savonix. As a result, the harm to the defendant if preliminary relief is granted may be great. Without marketing, Savonix will struggle to retain clients, which could significantly stunt the company's growth, or possibly force the company into dissolution. The plaintiff, however, being an established profitable company, should be able to weather the insignificant harms that Savonix could cause as a competitor. For that reason, a limited temporary restraining order will issue which will allow Savonix to disseminate, market, distribute and offer any services and/products that directly or indirectly compete with the plaintiff at the trade show in Las Vegas beginning on November 15, 2004 (the "Trade Show"). Any other direct or indirect competition with the plaintiff will be prohibited pending trial on the merits and a decision from this court.

## B.    THE PRAYER FOR A PRELIMINARY INJUNCTION

---

[3] Plaintiff's memorandum states that "[a]t present, the [RBM] has contracted with Rockland Trust Company, Provident Bank, Harris Bank, BMO Financial and AT&T Wireless to provide Merchandising Manager, and it is in the final stages of negotiation with approximately twenty-four additional prospective clients." See page 2.

4

In reviewing a request for injunctive relief, on the other hand, a court must "[E]valuate in combination the moving parties' claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving parties to a substantial risk of irreparable harm, the judge must then balance the risk against any similar risk of irreparable harm which, granting the injunction, would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party may conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only when the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).

Given the posture of this case, the court cannot now determine whether the plaintiffs are likely to succeed on the merits without a trial and with the benefits of examination and cross-examination. As noted above, the key issue at trial and in deciding whether a preliminary injunction should issue will be determining the date on which Lash created the Software. To resolve that issue on an expedited basis the court will consolidate further hearings on the prayer for injunctive relief with trial on the merits and will advance the trial on the docket of this court. See Mass. R. Civ. P. Rule 65 (b) (2).

## ORDER

For the reasons above, it is hereby Ordered as follows:

1) Plaintiff's prayer for a temporary restraining order is denied. Specifically, the
   defendant may attend the trade show in Las Vegas, Nevada beginning on

5

November 15, 2004 and may disseminate, market, distribute and offer its services and/or products at that show.

2) If the defendant secures any clients at said trade show, he may service those contracts.

3) The defendant may not, however, solicit nor contract with such additional clients until further order of this court. That order will follow a consolidated trial on a date to be suggested and agreed to by the parties.

4) At their earliest convenience, the parties are to advise this court of a date on which the parties will be ready for trial.

Robert H. Bohn, Jr.
Justice of the Superior Court

**DATED:** November 12, 2004

MIDDLESEX, ss.  **Commonwealth of Massachusetts**
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file and of record made by photographic process, I hereunto set my hand and affix the seal of said Superior Court this fifteenth day of November 2004.

Deputy                      Assistant Clerk

# EXHIBIT E

AO 88 (Rev. 1/94) Subpoena In a Civil Case - SDNY WEB 4/99

## Issued by the
## UNITED STATES DISTRICT COURT

DISTRICT OF _____ New Jersey

Albert L. Lash, IV

**V.**

RBM Technologies, Inc.

### SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1] 04-CV-10063(GAO)
**District of Massachusetts**

TO:   Custodian of Records
      Verizon Wireless
      180 Washington Valley Road
      Bedminster, NJ 07921

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached list

| PLACE | DATE AND TIME |
|---|---|
| Verizon Wireless, 180 Washington Valley Road, Bedminster, NJ 07921 | 03/20/2006  10:00 AM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff | 03/08/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
David W. Fanikos, Demeo & Associates, P.C., One Lewis Wharf, Boston, MA 02110. (617) 263-2600

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Attachment to Subpoena of Custodian of Records of Verizon Wireless

DEFINITIONS

 A.   For purposes of these requests for production, unless otherwise indicated or unless the context otherwise requires:

   1.   The term "any" shall be construed to include the word "all" and "all" shall be construed to include the word "any" as necessary to bring within the scope of a request all responses which might otherwise be construed to be outside its scope.

   2.   The term "between" shall be construed to include the word "among" and "among" shall be construed to include the word "between" as necessary to bring within the scope of a request all responses which might otherwise be construed to be outside its scope.

   3.   The term "Lash" shall refer to Plaintiff, Albert L. Lash, IV.

   4.   The term "RBM" shall refer to Defendant, RBM Technologies, Inc., and any affiliated corporations or other business entities under its control, any predecessors, successors in interest or licensees, and any of its directors, officers, employees, agents or representatives.

   5.   The terms "control" or "controlled" shall mean the power or ability of an entity to direct the management and policies of any person, firm or corporation.

   6.   The term "document" shall mean all tangible things of any type, composition, construction or nature, including without limitation, the original and each non-identical copy (whether different from the original because of notes made on the copy or otherwise) or draft of each writing of every kind and description (together with all worksheets, notes, supporting documents, and other relevant material), whether inscribed by hand or mechanical, electronic, microfilm, photographic or other means (such as recording, film, tape, videotape, disc, diskette, CD-ROM disc, laser disc, or other means including data processing files and other computer readable records or programs and all other

data compilations from which information can be obtained, transcribed and translated), and including, but not limited to, billing notes, billing entries, time slips, draft bills, edited bills, final bills, correspondence, letters, telegrams, telefaxes, telexes, e-mail, messages, telephone logs, diaries, memoranda, notes reports, printouts, records of meetings, conferences or telephone or other conversations or communications, appointment calendars, surveys, studies, statistical analyses, technical analyses, test reports, search reports, tabulations, drawings, plans, blueprints, specifications, graphs, books, magazines, newspapers, publications, articles, booklets, pamphlets, circulars, bulletins, brochures, advertising copy, contract bids, contracts, contract addenda, amendments, changes and modifications, data compilations, computerized records, etc.

7.    The terms "refer", "relate", "relating to" or "referring to" shall mean concerning, discussing, describing, containing, analyzing, studying, reporting on, commenting on, evidencing, setting forth, connected to, as a result of, considering, associated with, identified with, and/or constituting in whole or in part.

B.    The use of a verb in any tense shall be construed as the use of the verb in all other tenses, wherever necessary to bring within the scope of a request all responses which might otherwise be construed to be outside its scope.

C.    A plural noun shall be construed as a singular noun, and a singular noun shall be construed as a plural noun, wherever necessary to bring within the scope of a request all responses which might otherwise be construed to be outside its scope.

D.    Definitions provided herein apply to any grammatical variant of the term or phrase definition.

INSTRUCTIONS

1.    If you claim that any document or thing requested herein is protected from discovery by any privilege against disclosure, please specify the basis for the privilege or other ground for exclusion and produce a separate list of all such documents and things with your responses hereto. Such separate list shall identify each such document and thing by date, nature and/or type of document or thing, identify each author(s) or creator(s) (with title and designation), identify each recipient(s) (with title and designation), the original document/thing and/or any copies, title and subject matter of document or nature of thing, identify each custodian and/or location of the original document, thing and/or any copies, and the grounds for such claim of privilege.

2.    Unless otherwise indicated, the requests herein call for documents in existence at any time from May 1, 2001 to the date of this request, inclusive.

## DOCUMENT REQUESTS

1.    All documents that refer or relate to sales presentations made by RBM Technologies, Inc., including all digital, PowerPoint or video demonstrations.

2.    All project specifications created by RBM Technologies, Inc.

3.    All pricing sheets provided by RBM Technologies, Inc.

4.    All meeting notes and correspondence provided by RBM Technologies, Inc. and/or prepared by you as a result of meetings, correspondence or communications with or about RBM Technologies, Inc., including, but not limited to, documents in electronic form.

5.    All draft and/or final deal memos, letters of understanding and contracts received from, submitted to and/or entered into with RBM Technologies, Inc.

6.    All invoices provided by RBM Technologies, Inc.

7.    All documents that refer or relate to payments made to RBM Technologies, Inc.

8.    All manuals provided by RBM Technologies, Inc., including, but not limited to, documents in electronic form.

9.    All screen shots that refer or relate to representative modules of the software offered by RBM Technologies, Inc.

10.    All router logs from corporate networks and/or virtual private networks evidencing access to RBM Technologies, Inc.'s servers.

11.    All licenses granted by RBM Technologies, Inc. from 2000 to the present to use any software received from RBM Technologies, Inc.

12.    All documents that refer or relate to any indemnity received from or provided to RBM Technologies, Inc. regarding the use of the software developed by Lash or any software derived therefrom or any software that is substantially similar to software developed by Lash or any software derived therefrom.

13.    All documents that refer or relate to ownership of the software developed by Lash or any software derived therefrom or any software that is substantially similar to software developed by Lash or any software derived therefrom.

14.    All documents that refer or relate to Albert L. Lash, IV or Savonix Corporation and/or the Lash Software.

15.    All documents that refer or relate to litigation between RBM Technologies, Inc. and Albert L. Lash, IV and/or Savonix Corporation.